# MARY B. MANNING v. ST. PAUL GASLIGHT COMPANY.[1]

March 12, 1915.

Nos. 19,049—(260).

**Duty of gas company.**

1. Defendant manufactures and distributes illuminating gas. Such gas when allowed to escape in any considerable quantity becomes a highly dangerous substance, and the defendant must exercise a commensurate degree of care to prevent the gas from escaping up to the time it is measured and delivered, through its meter, to the consumer.

**Escape of gas from service pipe — res ipsa loquitur.**

2. The rule of *res ipsa loquitur* may be applied to a situation which discloses that gas escaped in destructive quantities from a break in the service pipe installed by the gas company upon the consumer's premises, at his cost, and when the evidence further shows that there had been no work or change upon such premises which could have affected the pipe, and no interference therewith. Under this rule defendant was not entitled to a directed verdict.

**Pleading and proof.**

3. The complaint, without the permitted amendment, *held* sufficiently broad to admit of proof showing improper installation of the service pipe.

**Refusal to give instructions.**

4. No error is found in refusing to give requested instructions, nor is there prejudicial error in the charge as given.

**Verdict — evidence.**

5. The verdict finds support under the evidence and the law.

Action in the district court for Ramsey county by the administratrix of the estate of Samuel J. Manning, deceased, to recover $7,500 for the death of her intestate. The case was tried before Catlin, J., and a jury which returned a verdict for $5,000. From an order

---

[1] Reported in 151 N. W. 423.

Note.—The authorities on the question of the liability of a gas company for negligence in the escape or explosion of gas are collated in notes in 29 L.R.A. 337 and 32 L.R.A.(N.S.) 809.

denying its motion for judgment notwithstanding the verdict or for a new trial, defendant appealed.    Affirmed.

*Butler & Mitchell,* for appellant.

*Charles W. Farnham* and *O'Brien, Young, & Stone,* for respondent.

HOLT, J.

While asleep in his home in St. Paul, Minnesota, on August 22, 1913, plaintiff's intestate, Samuel J. Manning, was asphyxiated by illuminating gas which had escaped through a break in the service pipe through which defendant supplied it to the building. Mr. Manning was alone in the house on the night he met death. Immediately upon his body being discovered, defendant made an investigation and ascertained that the gas found entrance to the house from a large break in the service pipe at a joint, or coupling, located in the ground about five feet away from where it passed through the foundation of the building. The pipe was laid about 27 inches below the surface. The ground was peaty. It however had been in no manner disturbed during the time Mr. Manning had been the owner, some four years. Defendant under its franchise installs the service pipe and connects it with a meter in the building to be supplied with gas; however, the owner of the building pays the cost of installation from the lot line to the meter. The complaint set forth: "That on or about August 22, 1913, the defendant wrongfully, unlawfully and negligently had permitted its pipes to become damaged, defective and leaky to such an extent that solely on account of such negligence, a large quantity of the defendant's illuminating gas was permitted to escape and did escape" into the dwelling house of Mr. Manning causing his death. Plaintiff had a verdict, and defendant appeals from the order denying its motion, in the alternative, for judgment notwithstanding the verdict, or a new trial.

Defendant is not entitled to judgment notwithstanding the verdict. There is no doubt the fatal accident was caused by defendant's gas which escaped from the break in the service pipe. Illuminating gas is a highly dangerous and destructive product when allowed to escape or to get beyond control. Defendant is engaged in the manu-

facture and distribution thereof, and in so doing is required to exercise a degree of care commensurate with the great danger likely to result from its escape.  The gas belongs to defendant until sold and delivered through its meter in the consumer's building, and therefore defendant should be responsible for its care until it is so measured and delivered.  We are unable to find any sound basis for making defendant's care and vigilance to prevent the escape of its dangerous product any less between the meter and the lot line, than between the lot line and the retort where manufactured.  Whether defendant owns the pipes in which its gas is confined or not is not important, for, the fact remains, such pipes are of its choosing as to kind, quality and method of installation.  They are not subject to the care or interference of any one but defendant.  Therefore, when it appears that upon the private premises where defendant has installed its product there has been no change or work done which, in any manner, could interfere with the service pipe containing defendant's gas and nevertheless a break has occurred in such pipe from which death or destruction has come, the doctrine of *res ipsa loquitur* applies.  This we deem decided in Gould v. Winona Gas Co. 100 Minn. 258, 111 N. W. 254, 10 L.R.A.(N.S.) 889.  The intimated possible distinction between the gas escaping from the service pipes upon the consumer's land and that from its defective pipes away from the premises upon which the injury is wrought, found in the last part of opinion, relates to a plaintiff's contributory negligence, and not to the burden of proof on the question of a defendant's negligence.  The decision goes to the proposition that the manufacturer and distributor of illuminating gas is held in damages for the escape of gas on the principle of negligence, and not of trespass; and that the escape of this agency in highly destructive quantities is *prima facie* evidence of negligence.

The trial court deemed the doctrine of *res ipsa loquitur* inapplicable, and we should ascertain whether defendant is entitled to a new trial because of errors or because of lack of evidence to support the verdict under the charge of the court.  The errors assigned depend chiefly on the claim that the complaint was insufficient to admit proof of defects in the installation of the pipe where the break

occurred. The court permitted plaintiff to amend; but we think the amendment added nothing of substance to the charge of negligence originally made. Permitting or suffering the pipe to become leaky does not necessarily convey the meaning that such condition was due alone to want of care subsequent to its installation, it may as well have resulted from faulty construction originally. And in its last analysis the actionable wrong was in negligently permitting the de-. structive gas to escape. We therefore hold evidence properly received as to the character of the soil wherein and the depth at which the pipe was laid, the absence of the usual blocking under the joint and how the pipe had sagged, and the condition in which the foundation had been left where it passed through.

Construing the complaint as we do, and holding that defendant is not absolved from the duty of care to prevent the escape of its gas, it follows that it was not error to refuse defendant's requested instructions to the effect that there was no justification for finding liability on the ground of defective installation, or for failure to maintain in a safe condition or for not guarding against the action of frost. The court was right in submitting those propositions to the jury.

We think the evidence amply justifies the verdict. The character of the soil around Manning's home was such that it was liable to settle, yet the usual precaution to block the service pipe at the coupling or joint was not taken. That the settling was considerable was shown by the fact that the sag of the pipe at the break was six inches. The soil was also of such character that the action of the frost was likely to heave or unsettle it to a great extent, and yet the pipe was placed at a depth of less than three feet. The evidence also tended to show no attempt in the original installation to plaster or make tight the foundation where the pipe passed through, thus a ready access to the basement was afforded the escaping gas.

The order is affirmed.