EGIDIO FABBRIZI v. VILLAGE OF HIBBING.
ANTONIO FABBRIZI v. SAME.[1]

July 9, 1954.

Nos. 36,230, 36,231.

[1]Reported in 66 N. W. (2d) 7.

*Dancer, Montague, Applequist, Lyons, Nolan & Nordine* and
*I. R. Galob,* for appellant.
*M. J. Mulvahill,* for respondents.

DELL, CHIEF JUSTICE.

Two actions against the defendant, village of Hibbing, arising out of a gas explosion were consolidated for trial. There was a verdict for the plaintiff Egidio Fabbrizi for $3,217.42 for personal injuries and property damage and one for the plaintiff Antonio Fabbrizi for $589.40 covering his property damage. From an order denying defendant's alternative motion for judgment notwithstanding the verdict or a new trial in each case, defendant took separate appeals.

The defendant, for many years, has been engaged in the manufacture and distribution of gas to its residents. During the period from 1919 to 1921 mining operations resulted in a movement of buildings and homes from North to South Hibbing, and new gas mains were laid by the defendant in the new south section. Plaintiff Egidio Fabbrizi, who for convenience will be referred to as the plaintiff, built a house in that section between 1919 and 1920. A gas service line was installed in 1921 on plaintiff's property to his home by the defendant connecting with its gas main located in the alley to the east of plaintiff's property. Defendant installed its gas meter at the plaintiff's house.

While the record presents a somewhat confused picture of the arrangements under which service lines were extended from the mains to the homes of consumers, we think it fairly appears that at the time of the installation the defendant followed two plans for the

installing of service lines. (1) Should a prospective consumer buy a gas stove from the defendant, it would install the line and connect the stove without a deposit from the consumer. (2) If a stove was not purchased, the defendant required the prospective purchaser to make a deposit which was credited to his account against gas to be consumed. In either event the installation of the service lines was done wholly at the expense of the defendant. The pipe used in the service line was three-fourths inch in diameter and one-eighth inch thick. It was of a kind and quality selected by the defendant, and the method of installation was of its own choosing. There was no shut-off valve installed at the connection between the service line and the main in the alley nor was any means provided for controlling or stopping the flow of gas in the service line from defendant's mains to the meter. The sole purpose of installing the service line was to supply plaintiff with defendant's gas, delivery to be made at the meter. Defendant concedes that it was the owner of the gas until it passed through the meter.

A short distance west of the main in the alley and on plaintiff's property was an area of "muskeg" or "peat" through which the service line was laid. The line was installed at a depth of about two and one-half feet below the surface of the ground. In 1930 plaintiff built a garage over the service line and in 1935 laid a cement floor in it. Between the time of its installation and the date of the explosion, no work was done or repairs made upon the service line. There is a dispute between the parties as to whether plaintiff or the defendant was the owner of the service line, but in view of the conclusion which we have reached, it becomes unnecessary for us to determine its ownership although there is evidence from which it might well be inferred that the line belonged to the defendant.

On July 25, 1952, at about 10:10 p. m. plaintiff entered his garage. He detected no odor of gas. He inserted the key in the ignition switch and stepped on the starter, and there was an explosion, presumably caused by a spark, which demolished the garage, wrecked the car, and injured the plaintiff. The parties agree that the explosion was caused by leakage of gas from the service line.

The line from the main to the east wall of the garage and for a short distance under it was uncovered. This had deteriorated and there were holes in it. There was evidence that this condition had been present for from five to seven years. The portion of the line between the main and plaintiff's east property line was not as bad as the portion to the west of his property line. Later the service line from the garage to the house was uncovered and that appeared to be free from defects. There was ample evidence from which the jury could find that the life of the service line in muskeg or peat soil of the type involved here was from 10 to 15 years. In 1936, as a W. P. A. project, a portion of the gas mains in South Hibbing was excavated and inspected and there were some replacements made because of their deterioration. These mains were of the same kind and quality as the service lines but were thicker and larger in diameter. There was evidence that the life of the service lines, because of their thickness as compared to the thickness of the mains, would be less than the life of the mains. There was also testimony from Ivan Burt, who was in charge of the construction work of the gas department of the defendant, that the gas lines were commencing to play out because of their age. In answer to a special interrogatory, the jury found that the gas which caused the explosion came from a leak in the service line on plaintiff's property.

■ The court submitted the question of the defendant's liability to the jury on the issue of whether it was negligent in failing to exercise due care to prevent the escape of gas from the service line. In doing so it relied upon the case of Manning v. St. Paul Gaslight Co. 129 Minn. 55, 151 N. W. 423, L. R. A. 1915E, 1022, and instructed the jury as follows:

"This duty or responsibility of the village continues in the handling of the gas so long as it remains the property of the defendant, which is until it passes through the meter into the consumer's premises. That is, that duty continues from the time it is manufactured at the last plant until it passes through the meter in the home of Mr. Fabbrizi, or any other customer."

This instruction defendant assigns as error and also assigns as error the failure of the court to give its requested instruction which reads as follows:

"If you find that the leak in the line which caused the explosion was located on the property of the plaintiff Egidio Fabbrizi, then your verdict must be for the defendant Village of Hibbing."

The furnishing of gas to consumers by the defendant is a proprietary function[2] and for torts committed by it while acting in this capacity it is subject to the same liability as private corporations.[3] It may be generally stated that, where a gas company does not install or own the service lines on private property *and exercises no control over them,* it is not responsible for the condition in which they are maintained and is not liable for damages caused by a leak therein of which it does not have notice.[4] And a gas company, in the absence of notice of defects in the service lines, is not required to make inspections of the lines on private property when the lines are not owned by it *or under its control.*[5] The fact that a gas company did not install the service lines or own them has been held not to relieve it from liability for injuries caused by defects in such

[2]Brantman v. City of Canby, 119 Minn. 396, 138 N. W. 671, 43 L.R.A. (N.S.) 862; see, Peterson, *Governmental Responsibility for Torts in Minnesota,* 26 Minn. L. Rev. 293, 353.

[3]Keever v. City of Mankato, 113 Minn. 55, 129 N. W. 158, 775, 33 L.R.A. (N.S.) 339; Borwege v. City of Owatonna, 190 Minn. 394, 251 N. W. 915; Hahn v. City of Ortonville, 238 Minn. 428, 57 N. W. (2d) 254; see, Peterson, *Governmental Responsibility for Torts in Minnesota,* 26 Minn. L. Rev. 293, 296.

[4]Hanley v. Peoples Natural Gas Co. 325 Pa. 6, 188 A. 157; Skufca v. East Ohio Gas Co. (Ohio) 101 N. E. (2d) 504; Kelley v. Public Service Co. 300 Ill. App. 354, 21 N. E. (2d) 43; Annotation, 26 A. L. R. (2d) 156.

[5]Clare v. Bond County Gas Co. 356 Ill. 241, 190 N. E. 278; Cooper v. Tri-State Gas Co. 3 Ohio App. 77; Hanley v. Peoples Natural Gas Co. *supra;* Wilson v. East Ohio Gas Co. 68 Ohio App. 490, 42 N. E. (2d) 180; Annotation, 26 A. L. R. (2d) 159.

lines where the company *assumed or exercised control over them.*[6]

The service line involved here served but one purpose and that was to carry defendant's gas to the meter. Under the evidence, plaintiff had no right to interfere with the line or to permit a plumber to do so without first obtaining permission from the defendant. There was no way in which plaintiff could control the flow of gas in the line as defendant had provided no shut-off valve or other means of control. Defendant, while using said service line for the transmission of its gas to the meter, was in exclusive control of the line irrespective of ownership. Having been given the right of exclusive control of the line, it owed the corresponding duty of exercising reasonable care to keep it in a proper state of repair so as to prevent the escape of gas, a highly dangerous and destructive product when allowed to get beyond control.[7] The plaintiff, by granting the right to the defendant to transmit its gas across plaintiff's premises through the service line to the meter for delivery to plaintiff at that point, granted defendant the continuing right to go upon plaintiff's property for the purpose of inspecting and keeping said line in a proper state of repair in the same manner as the defendant, through the location of its meter, was granted the continuing right to go upon plaintiff's property to read, service, and keep said meter in a proper state of repair. What this court said in Manning v. St. Paul Gaslight Co. applies with equal force here. We there stated (129 Minn. 57, 151 N. W. 424) :

"* * * Whether defendant owns the pipes in which its gas is confined or not is not important, for, the fact remains, such pipes are of its choosing as to kind, quality and method of installation. They are not subject to the care or interference of any one but defendant."

---

[6]Groff v. Charleston-Dunbar Natural Gas Co. 110 W. Va. 54, 156 S. E. 881; Hamden Lodge No. 517, I. O. O. F. v. Ohio Fuel Gas Co. 127 Ohio St. 469, 189 N. E. 246; Mattson v. Central Elec. & Gas Co. (8 Cir.) 174 F. (2d) 215; Washington Gas Light Co. v. District of Columbia, 161 U. S. 316, 16 S. Ct. 564, 40 L. ed. 712; Annotation, 26 A. L. R. (2d) 163.

[7]See, Manning v. St. Paul Gaslight Co. *supra.*

Defendant suggests that we abandon the rule laid down by this court in Manning v. St. Paul Gaslight Co. *supra*. We can find no sound reason for the suggestion and decline to do so. We conclude that under the evidence the instruction given by the court was right and that defendant's requested instruction was properly denied.

■ Defendant claims that the deterioration in the service line, which caused the leak resulting in the explosion, came about, at least in part, because plaintiff built his garage over the line. At the time the garage was constructed, that practice was not unusual in Hibbing, and defendant then had no objection to that being done. Later the practice was changed, but those who had erected garages, including the plaintiff, were not notified by defendant of the change. Whether plaintiff was contributorily negligent in erecting the garage over the service line was submitted to the jury as an issue in the case. By its verdicts that defense was rejected. The issue, at best, was for the jury.

Defendant was not entitled to judgment notwithstanding the verdicts. Its negligence was likewise for the jury and the verdicts are justified by the evidence.

Affirmed.