# CHESTER T. WILSON AND ANOTHER v. HOME GAS COMPANY, INC.

125 N. W. (2d) 725.

January 3, 1964—No. 38,565.

*Stanley Efron,* for appellants.
*W. P. O'Brien,* for respondent.

KNUTSON, CHIEF JUSTICE.

This is an appeal from an order of the trial court denying plaintiffs' motion for a new trial on the issue of liability only.

The case arises out of a propane gas explosion, which, with the ensuing fire caused by the explosion, substantially wrecked plaintiffs' home and caused plaintiff Chester T. Wilson to suffer personal injury.

In 1950, defendant, Home Gas Company, Inc., made an installation of a propane gas system in the home of plaintiffs. The pipes and fittings for the system were furnished and sold by defendant. The installation consisted of an outdoor 500-gallon bulk tank located above ground; an underground supply pipe into the house; and pipes running along the south wall to the furnace and branching off to certain appliances.

Plaintiffs' home was a one-story house with a full basement. In the southeast corner of the basement was a utility room, and in it, among other things, was a gas hot-water heater; in the southwest corner of

the basement was a propane gas furnace; and in the kitchen on the ground floor were an old Servel refrigerator and a gas stove. None of these appliances were purchased from or owned by defendant. Defendant did hook up the supply line to these appliances and the furnace.

Over the years, defendant had been called on occasions when plaintiffs had a problem about gas. The last time that gas odor had been detected was early in March 1959. Defendant's employees went to plaintiffs' home and apparently repaired the defect, although the record does not show what they did. Thereafter, neither Mrs. Wilson nor anyone else smelled the odor of gas until the evening of May 29, 1959. During that evening Mr. Wilson was at home alone, sleeping on a couch, when he was awakened by the ringing of the telephone. When he arose to answer the telephone he felt groggy, and thinking the grogginess might be caused by gas he went down to the basement to investigate. He testified that it was "so thick you couldn't breathe." When Wilson opened a basement door in order to go out to shut off the gas tanks, an explosion occurred, causing his injuries and the destruction of the house.

The case was submitted to the jury on a special verdict. The jury found that defendant was not guilty of negligence; that plaintiffs were guilty of negligence; but that their negligence was not a proximate cause of the injury. The jury also found Chester Wilson's damages for personal injuries to be the sum of $18,000. To that amount was to be added property damages suffered by reason of the destruction of the home and its contents, covered and paid for by insurance.

The determinative evidence consisted largely of the testimony of two expert witnesses, one called by plaintiffs and the other by defendant. Neither expert could determine with any degree of certainty what caused the accumulation of gas in such quantities as to permit an explosion of this proportion. Examinations were made of all the appliances after the explosion, but it was conceded that the heat of the fire or the force of the explosion might have changed the controls and other pipes and connections that could conceivably have permitted the

escape of gas. Neither of the experts would rule out any of the appliances as a possible source of escaping gas.

Professor Adolph O. Lee was questioned about a report given to plaintiffs prior to the trial which stated, "Both failures of safety shut-offs and leakage of pipes are approximately the greatest physical conditions existing and are not sufficient to allow me to determine the true cause of the gas leak which came into the basement atmosphere." He said in answer to the accuracy of the statement, "That's true." He was then asked:

"These pictures I think we have all seen. And, now, Page 15 and in the same sentence, and this was written before you made your microscopic examination of the pipe, 'Means by which propane and bottle gas escaped in the basement atmosphere could not be determined, but two likely existed. One, a leak in the gas piping; and two, failure of controls particularly on the hot water heater.' "

His answer was: "That's correct."

Professor Frank B. Rowley, who appeared for defendant, gave substantially the same testimony. He stated that the escaping gas could have come from a leaking pipe or from a failure of the controls on any one of the appliances and that there was no way of determining where it came from after the explosion and resulting fire.

While plaintiffs raise a number of issues now, they involve mainly the admissibility of evidence and the court's instructions relating to the degree of care required of a supplier of gas. The issues will be discussed separately.

Plaintiffs called Dr. Willis L. Herbert, who testified, among other things, that Mr. Wilson had developed a traumatic mental depression. On cross-examination he stated:

"* * * I would ask him why he was depressed and he would tell me that he was depressed on account of the loss he suffered in that explosion. And I would ask him to qualify that and he would qualify that by stating that he was not entirely covered by insurance."

He was then interrogated as follows:

"Q. You didn't know that his house was fully covered with insur-

ance up to the amount of $17,500.00 including all his living expenses while he was finding a house?"

At this point plaintiffs' counsel objected to the question as being irrelevant and immaterial, but the witness was permitted to answer.

"A. No, he did not advise me of that.

"Q. You did not know that he had over $10,500.00 worth of insurance on the contents of that house, did you?

"A. No, I did not.

"Q. You did know that he had coverage with several disability companies, did you not, because you had to send in reports in order— send in disability reports in order for them to pay the medical bills?

"A. Yes."

Later court and counsel retired to the court's chambers and a discussion followed. The court indicated its opinion that "defense counsel now may cross-examine the plaintiff as to his reimbursement for his property losses with relation to his claim of mental depression due to such worry over his losses due to this fire and destruction of his property."

After some further discussion, it was stipulated between the parties that plaintiffs had been compensated for all of their property damage by insurance companies except the sum of $225. As a result of this stipulation, the court instructed the jury:

"The parties have agreed and stipulated that the total of said damage was in the sum of $28,700.00. The parties have further agreed and stipulated that the loss in said amount, except the sum of $200.00 has been paid to the plaintiffs by certain insurance companies which carried the insurance on the property. You need not pay any further attention to this question of damages as the relationship and rights between the plaintiffs and the insurance carriers will be disposed of by the Court in determining the final result of this litigation."

Plaintiffs now claim that it was reversible error to overrule their objection to questions showing payment of property damage by insurers.

This claim is untenable for two reasons: Plaintiffs' appeal here is

from the denial of a motion for a new trial on the issue of liability only. They seek no retrial of the issue of damages. Even if the court's ruling was erroneous, it would not affect the issue of liability, so clearly it would be error without prejudice.

Secondly, it was not error on the part of the court to admit evidence showing the existence of insurance on the state of the record in this case. Dr. Herbert, testifying to Mr. Wilson's personal injuries, based his opinion that Wilson had developed a traumatic mental depression on statements attributed to Wilson that he was worried because his loss was not covered by insurance. Thus it became relevant to that issue to show that there was no substance to such claim. Ordinarily, it is not permissible to show payment of a loss by an insurer in order to reduce or defeat a recovery,[1] but it is permissible to show that a litigant has insurance to cover a loss for a purpose material to an issue in the case. Thus, in Wentworth v. Butler, 134 Minn. 382, 159 N. W. 828, defendant claimed that plaintiff was feigning an injury. To support that claim, defendant sought to show that plaintiff had accident insurance, for which he had received payments. While we held that it was not reversible error to exclude such evidence for the reason that in that case it had little probative force, we said (134 Minn. 383, 159 N. W. 828):

"As bearing upon the contention that the plaintiff was feigning, the defendant offered to show by him that he had accident insurance at the time and made a claim of disability and received payments under the policy. The purpose of the testimony was not to reduce damages by showing that the plaintiff profited by accident insurance. For such purpose it was not competent. * * * The purpose as announced by counsel was to show the interest of the plaintiff and his motive for the feigning of which there was at the time evidence. We are of the opinion that this evidence might have been received."

In Pearson v. Zacher, 173 Minn. 365, 217 N. W. 369, we held that

---

[1]Evans v. Chicago, M. & St. P. Ry. Co. 133 Minn. 293, 158 N. W. 335; see, State ex rel. City of Duluth v. District Court, 134 Minn. 28, 158 N. W. 791.

it was not error to permit plaintiff to show that defendant was insured as bearing on the ownership of the automobile involved in the case. Again, in Barg v. Bousfield, 65 Minn. 355, 68 N. W. 45, we held that it was not error to show the existence of insurance as bearing on the issue of whether a person was an employer or an independent contractor. And in Gibson v. Gray Motor Co. 147 Minn. 134, 179 N. W. 729, it was held not error to show the existence of insurance as bearing upon the bias of a witness.

It seems, therefore, that the rule we have followed, as shown by our case law, is that the existence of insurance in a case such as this may not be shown to defeat or diminish recovery, but, if it becomes relevant to prove or rebut an issue arising in the trial of the case, it may be admissible even though it is prejudicial. The problem is discussed in McCormick, Evidence, § 168, wherein the author states that such evidence may become admissible under a number of exceptions to the general rule of irrelevancy and inadmissibility. It was, therefore, not error in this case to permit defendant to show that the doctor was basing his opinion upon erroneous facts.

■ Plaintiffs seek to invoke the rule of res ipsa loquitur. The rule clearly is inapplicable here because the explosion conceivably could have resulted from one of a number of causes, several of which were not within the control of defendant. In Boutang v. Twin City Motor Bus Co. 248 Minn. 240, 244, 80 N. W. (2d) 30, 36, we said with respect to the application of the rule:

"* * * It is elementary that the res ipsa loquitur rule has application only where the apparent cause of the accident is such that the defendant would be solely responsible for any negligence connected with it; and if an unexplained accident may reasonably be attributed to one or more causes for which the defendant is not responsible, it is error to apply the rule as a basis for a permissive inference of negligence."

While it may not be necessary to conclusively exclude all other causes,[2] the evidence must reasonably eliminate causes other than de-

---

[2]Rinkel v. Lee's Plumbing & Heating Co. 257 Minn. 14, 99 N. W. (2d) 779.

fendant's negligence. If the jury is to apply the doctrine of res ipsa loquitur, the negligence upon which recovery is based must rest on a cause for which defendant is responsible.[3] Here they could find that the explosion resulted from any one of several causes for which defendant was not responsible.

The cases of Manning v. St. Paul Gaslight Co. 129 Minn. 55, 151 N. W. 423, L. R. A. 1915E, 1022, and Gould v. Winona Gas Co. 100 Minn. 258, 111 N. W. 254, 10 L.R.A. (N.S.) 889, relied on by plaintiffs, are clearly distinguishable in that in both of those cases it appeared that the explosion was caused by gas escaping from a pipe for the maintenance of which defendant was responsible. No other cause was involved. In the Manning case we said (129 Minn. 57, 151 N. W. 424):

"* * * The gas belongs to defendant until sold and delivered through its meter in the consumer's building, and therefore defendant should be responsible for its care until it is so measured and delivered."

In Peterson v. Minnesota Power & Light Co. 207 Minn. 387, 390, 291 N. W. 705, 707, relied upon to some extent by plaintiffs, we said:

"* * * One essential prerequisite to the application of *res ipsa loquitur* is that defendant must have exclusive control of the instrumentality causing the harm. * * * From this fact reason permits the inference that it must have been defendant who was negligent for fault cannot be traced to any other party. Manifestly the mere occurrence of the event without control by defendant would not justify the conclusion that it was the one responsible.

                 *     *     *     *     *

"* * * *res ipsa loquitur* cannot apply where there is divided control."

In this case it is evident even from plaintiffs' own expert witness that the cause of the explosion was not traceable to the escape of gas from pipes over which defendant was charged with responsibility. The

---

[3]See, Prosser, Torts (2 ed.) § 42.

gas could have escaped from any of the appliances for which defendant was not responsible.[4]

■ Many of the assignments of error relate to the court's instructions as to the degree of care required of one who sells or distributes propane gas. Plaintiffs seek to invoke a high degree of care, analogous to the rule applied to common carriers. They complain of the court's instruction, which as far as material reads:

"* * * As it is used in the law, negligence is defined as a failure to exercise that degree of care under any given circumstances which a person of ordinary care and prudence would exercise under similar circumstances.

"What constitutes reasonable care depends upon the circumstances of the particular case. The care must be proportionate to the danger known or reasonably to be apprehended. That is, it must be commensurate to the risk of the situation. The greater the danger, the greater the care required. But the standard always remains the same, reasonable or ordinary care.

$$* \quad * \quad * \quad * \quad *$$

"Gas is a highly dangerous substance. Its tendency to escape and the danger incident thereto is well known. A company engaged to service a customer's supply line use (sic) the same degree of care which an ordinarily prudent person would exercise under like circumstances in controlling such an article. That is to say that degree of care which is proportionate to the known danger or the danger which was reasonable to be apprehended from escaping gas. Notwithstanding the requirement of this rule of ordinary care, as applied to situations of this kind the law does not make a gas company an insurer against damages to person or property from the escape of gas, and liability is usually predicated on negligence.

"A gas company is guilty of negligence, if a leak or leaks in a customer's supply line or pipes causes injury to persons or property, pro-

---

[4]See, Risberg v. Duluth, M. & I. R. Ry. Co. 233 Minn. 396, 47 N. W. (2d) 113; Mathews v. C. & N. W. Ry. Co. 162 Minn. 313, 202 N. W. 896; Prosser, *The Procedural Effect of Res Ipsa Loquitur*, 20 Minn. L. Rev. 241.

vided, however, the company has sufficient notice of such leak or leaks, and having received such notice fails to exercise ordinary care applicable to situations of this kind in its inspection or in the repair of such leak. Negligence on the part of an employee or agent in performance of his duties within the scope of his employment is imputed to the employer and renders the employer liable for damages resulting from the employer's or agent's negligence."

The court's instruction, read as a whole, was adequate. While it deals with ordinary care, it clearly equates the degree of care required with the dangers involved in the particular situation. Ordinary care commensurate with the dangers involved is the test we have followed in these cases.

In Bellefuil v. Willmar Gas Co. Inc. 243 Minn. 123, 126, 66 N. W. (2d) 779, 782, where the cases are quite exhaustively examined, we said:

"* * * A distributor of gas must exercise a degree of care to prevent the escape of gas proportionate to the danger which it is its duty to avoid.

"With respect to gas appliances in a customer's building which are not installed, owned, or controlled by the gas company, a gas company has no duty to make periodic inspections to ascertain the safety of such appliances in the absence of some contract, custom, or statutory obligation. The company can act upon the assumption, in the absence of notice to the contrary, that the customer's appliances are in repair so as to permit the transmission of gas therein with safety. In the absence of a contrary showing, it is the responsibility of the customer to maintain and repair his appliances. If, however, a gas company acquires, or ought reasonably to have acquired, knowledge of a dangerous condition, it is its duty to shut off the gas until the customer has his pipes, connections, and appliances properly repaired."

Plaintiffs also seek to cast upon defendant the duty of constant inspection and conclusive liability in case the gas escapes for any reason. Such has never been the law. The court held defendant responsible for reasonable inspection of the installation it used in delivering the

gas. While defendant did connect the gas to several appliances in plaintiffs' house, it neither owned nor controlled such appliances. This is another example of a trial by experts, but neither the expert called by plaintiffs nor by defendant would exclude the furnace, the refrigerator, the stove, or the hot-water heater as a possible source of escaping gas. Defendant had answered a call from plaintiffs not long before the explosion and had repaired something, the exact nature of which does not appear from the record. Neither Mrs. Wilson, who had an especially sensitive perception to the small of gas, nor anyone else, detected the odor of gas from that time until the explosion. To apply the rule plaintiffs seek to invoke would require the gas supplier to stay on the premises constantly in order to detect immediately the escape of gas if any appliance ceased to function properly. The duty to inspect does not require a system of inspection "at all times" but rather a duty to make reasonable inspections,[5] and then, as to appliances not owned or controlled by the defendant, only after a reasonable notice of the existence of danger. To apply any other rule would make the gas supplier an insurer if anything went wrong with any of the appliances over which it had no control. Recognizing that escaping gas is a dangerous substance, we have consistently held that the supplier of gas is not an insurer of customers for injury or damage resulting therefrom, unless it can be shown that the gas has escaped from a pipe over which the defendant was charged with responsibility.

While plaintiffs would have us hold that these appliances were "installed" by defendant because they were connected to the gas line, we think use of the word "installed" carries with it an implication similar to the words "owned or controlled." In other words, a greater duty arises as to pipes and appliances that are the responsibility of defendant, like its gas line.[6] As to appliances owned and controlled by the customer, the duty of the supplier is to shut off the gas or to make repairs after reasonable notice has been given to it that gas is escaping.

[5]See, Pappas v. Peoples Gas Light & Coke Co. 350 Ill. App. 541, 113 N. E. (2d) 585.

[6]Manning v. St. Paul Gaslight Co. 129 Minn. 55, 151 N. W. 423, L. R. A. 1915E, 1022.

Thus, in Manning v. St. Paul Gaslight Co. 129 Minn. 55, 151 N. W. 423, L.R.A. 1915E, 1022, and similar cases, we applied a strict rule of liability when gas escapes from a pipe over which the defendant has control and for which it is responsible, but the same rule does not apply to gas escaping from appliances owned by the customer and maintained by him.

In Fabbrizi v. Village of Hibbing, 242 Minn. 464, 468, 66 N. W. (2d) 7, 9, we said:

"* * * It may be generally stated that, where a gas company does not install or own the service lines on private property *and exercises no control over them,* it is not responsible for the condition in which they are maintained and is not liable for damages caused by a leak therein of which it does not have notice. And a gas company, in the absence of notice of defects in the service lines, is not required to make inspections of the lines on private property when the lines are not owned by it *or under its control.*"

Applying these rules to the facts of this case, it is evident that the liability of defendant was limited to a failure to maintain the pipe which brought the gas into plaintiffs' house. The case was tried on that theory. Defendant was under a duty to inspect other appliances, or to shut off its supply of gas, only on reasonable notice of the existence of danger. This it did. The court found, at the very least, that plaintiffs failed to sustain their burden of proving that the explosion resulted from gas escaping from an installation over which defendant was chargeable with responsibility. After all, a finding of negligence rests on a breach of duty. Absent a duty to inspect without notice, there can be no finding of negligence for a breach of such nonexisting duty. In Bellefuil v. Willmar Gas Co. Inc. 243 Minn. 123, 129, 66 N. W. (2d) 779, 784, we said:

"* * * But the duty, by reason of actual or constructive notice of some dangerous condition, must arise before the gas company can be found negligent for its failure to inspect or shut off the gas supply."

Even plaintiffs' own expert admitted that it would be unlikely that

the volume of gas required to cause this explosion could have escaped from a leak in the pipe for the maintenance of which defendant was responsible. He also admitted that the stove, refrigerator, furnace, and hot-water heater could not be excluded as possible sources of escaping gas. Under these circumstances, we think that the court correctly held that the jury's findings could not rest on a mere guess as to where the gas came from and that recovery would be permitted only if it found that the gas escaped from defendant's pipe. Nor is this contrary to Trimbo v. Minnesota Valley Natural Gas Co. 260 Minn. 386, 110 N. W. (2d) 168, for in that case we held that the gas company had notice of a defect which required it to act.

The same is true of DeVries v. City of Austin, 261 Minn. 52, 63, 110 N. W. (2d) 529, 537, where we said:

"* * * it [the supplier of gas] is required to exercise due care to prevent the escape of gas proportionate to the danger which it is its duty to avoid, * * *."

■ Finally, plaintiffs assign as error the court's instruction that there was no evidence of negligence other than failure of defendant to properly maintain the pipe fitting in the corner of one of the rooms in the basement. They maintain that the jury should have been instructed that they could infer negligence from circumstantial evidence indicating that defendant was negligent elsewhere.

This claim must fail for several reasons. In the first place, plaintiffs did not request instructions on this phase of the case. Neither is it mentioned in their motion for a new trial except in so far as it is included within the assignment of error regarding failure to submit res ipsa loquitur, which read:

"The Court erred in refusing to instruct the jury as to the permissible inferences of negligence arising by virtue of circumstantial evidence, based on res ipsa loquitur."

We have already discussed the inapplicability of res ipsa loquitur. Not having been raised at the trial or in plaintiffs' motion for a new

trial, the assigned error cannot now be raised for the first time on appeal.[7]

In the second place, under Rule 49.01 of Rules of Civil Procedure, where the case is submitted to the jury on a special verdict and the court omits any issue of fact raised by the pleadings or by the evidence, a party waives his right to a trial by jury on that issue unless he demands its submission to the jury before the jury retires. There was no such request made here, nor has the court been asked to make a finding after the jury's verdict.[8]

Finally, the record indicates clearly that the only evidence introduced by plaintiffs of a gas leak in any of the pipes relates to the exhibit designated in the record as GG, which was located in the corner of one of the rooms in the basement. There being no evidence upon which a finding of negligence could rest as to any other pipe or appliance for which defendant was responsible, there could be no error in failing to submit to the jury any issue of negligence elsewhere.

Affirmed.

---

[7] Rules of Civil Procedure, Rule 51; cf. Trudeau v. Sina Contracting Co. Inc. 241 Minn. 79, 62 N. W. (2d) 492.

[8] See, Wormsbecker v. Donovan Const. Co. 247 Minn. 32, 76 N. W. (2d) 643.