GEORGE W. KOWALSKE v. ARMOUR AND COMPANY AND OTHERS.

220 N. W. 2d 268.

June 28, 1974—No. 44216.

302

*Cochrane & Bresnahan, James G. Roban,* and *John A. Cochrane,* for appellant.

*Mahoney, Dougherty, Angell & Mahoney, Richard P. Mahoney,* and *John F. Angell,* for respondent.

Heard before Sheran, C. J., and Otis, Scott, and Knutson, JJ., and considered and decided by the court.

KNUTSON, JUSTICE.*

This is an appeal from an order denying plaintiff's post-trial motion for judgment notwithstanding the verdict or a new trial. Plaintiff, George W. Kowalske, was employed by Donovan Construction Company during the spring of 1966 in moving a high tension electric line which was located on a dike bordering the Mississippi River in order to permit another contractor to replace the dike. The line extended for about one mile along the Mississippi River. As a member of the work crew assigned to this project, plaintiff's duties were to drive the crew that worked on the power lines; to keep records of everything that was taken off the old poles and installed on the new poles; and to pick up supplies at another Northern States Power station. In addition, on occasions plaintiff assisted the linemen who worked on the power poles.

During the time plaintiff worked on this project, he contracted the disease known as brucellosis.

Defendants Armour and Company and Swift and Company operate separate slaughtering plants and defendant Van Hoven maintains a rendering business near the South St. Paul stockyards in the area where plaintiff was working. Plaintiff alleged in his original complaint that defendants negligently allowed

---

* Retired Chief Justice acting pursuant to Minn. St. 2.724.

offal and carcasses to accumulate upon their lands while plaintiff was working on defendants' properties, thus causing plaintiff to contract brucellosis. At the trial, plaintiff testified that he had been forced to move an animal carcass from beneath a pole in the area of the Van Hoven rendering station. While the evidence of plaintiff was largely uncorroborated by other witnesses and in many respects contradicts that of defendant Armour, plaintiff testified that secretion, manure, and debris extended all along the line of poles upon which the crew was working and that animal hides and carcasses were constantly being transported from the slaughtering houses in open carts and trucks.

The only medical expert to testify at the trial on the issue of possible causation was Dr. Wesley W. Spink, called by the defendant. Dr. Spink is regents professor of medicine at the University of Minnesota. He has been on that staff since 1937 and during that time has made an extensive study of the disease of brucellosis. He has served not only in Minnesota but as a consultant for several other countries and the Federal government. No one seems to question his eminent qualifications in this field of study.[1]

Brucellosis, according to Webster's Third New International Dictionary (1961) p. 285, is "a disease caused by bacteria of the genus *Brucella* * * * a disease of man of sudden or insidious onset * * * acquired through direct contact with infected animals or animal products or from the consumption of milk, dairy products, or meat from infected animals."

According to Dr. Spink, "brucellosis is a term given to the disease which previously was called undulant fever" and is transmitted from animal to man, "[n]ever from man to man." As to what causes brucellosis, the doctor said:

"Well, that's a microbe called brucella, and I said it is brucella

---

[1] While Dr. Thomas Votel was called by plaintiff, it appears he did not testify on the issue of causation. His testimony has not been included in the record.

abortus, which means it's—this microbe, brucella abortus because in the cow it causes abortions; so it's one of the most common causes of abortion, and so the farmer has many headaches; so it's brucella abortus."

It seems to be conceded that the disease is transmitted from animal to man by contact with an animal or parts of an animal which is infected with the disease. According to Dr. Spink, there are three different types of brucellosis, one of which affects cattle, another, swine, and a third, goats. He said the first two are found in this area but the type more commonly found is that which infects cattle.

Plaintiff, having recovered workmen's compensation from his employer, instituted a third-party action against defendants. The case was tried and submitted under our comparative negligence statute. Shortly after commencement of the trial, plaintiff effected a settlement with defendants Van Hoven and Swift and their attorneys withdrew from any further participation in the case. The jury rendered a verdict, finding Armour 10-percent negligent; plaintiff 10-percent negligent; and Van Hoven 80-percent negligent in causing plaintiff to contract the disease of brucellosis. It found Swift was not guilty of any negligence.

As to the manner in which the disease can be contracted, Dr. Spink testified:

"* * * One, contact with hands of the diseased animal tissue. In the slaughterhouse, of course, this would be handling the material, guts, pancreas, and so on. The farmer by handling the aborted material, afterbirth, membranes, and so forth, and * * *.

\* \* \* \* \*

"A.   One other method, less likely, but it does occur in some countries, not in this state any more, through drinking unpasteurized milk from diseased cattle because organisms are excreted in the milk.

"Q.   Would it come, Doctor, from handling a dead carcass?

"A.   If the animal died of brucellosis, there is a possibility, yes."

To sum it up, Dr. Spink's opinion was that plaintiff contracted the disease by coming into contact with a diseased bovine carcass. While on cross-examination he admitted there was a remote possibility that the disease could be contracted by coming into contact with the hide of an infected animal, a cart carrying carcasses of animals which had had brucellosis, or the excrement or blood traces of a diseased animal, he was of the opinion that the disease in this case was contracted by contact with the body of a diseased animal. There is no evidence in the case that would support a finding that plaintiff contracted the disease in any other manner.

It would seem that the main thrust of plaintiff's appeal is based on the contention that Armour and Van Hoven are jointly and severally liable under Minn. St. 604.01, subd. 1, which in relevant part reads:

"* * * When there are two or more persons *who are jointly liable,* contributions to awards shall be in proportion to the percentage of negligence attributable to each, provided, however, that each shall remain jointly and severally liable for the whole award." (Italics supplied.)

To support his contention, plaintiff relies on the case of Krengel v. Midwest Automatic Photo, Inc. 295 Minn. 200, 203 N. W. 2d 841 (1973). The decision in that case is based on the fact that the defendants were engaged in a joint economic venture. In the case of Marier v. Memorial Rescue Service, Inc. 296 Minn. 242, 207 N. W. 2d 706 (1973), we refused to extend the rule of the Krengel case to a case where the jury found each of two defendants and plaintiff guilty of the same percentage of negligence. In that case, we said:

"Our comparative negligence statute was based on Wis. Stat. 1969, § 895.045, the predecessor of which was adopted in 1931. We have held that, when we adopt a statute from another state which has been interpreted by the highest court of that state, we normally take the interpretation with the statute up to the

time of the adoption of our statute. Olson v. Hartwig, 288 Minn. 375, 377, 180 N. W. 2d 870, 872 (1970).

"In construing § 895.045, prior to its amendment in 1971,[2] the Wisconsin Supreme Court held on numerous occasions that, in order for the plaintiff to recover against any defendant in a multiple-party action, his negligence must be less than that of the party against whom recovery is sought. [Citations omitted.]

\* \* \* \* \*

"We adopt the Wisconsin rule and hold that, in order for a plaintiff to recover from a defendant, his negligence must not be as great as the negligence of the defendant against whom he seeks recovery. If the percentage of a plaintiff's negligence is the same as the percentage of negligence of a defendant against whom he seeks recovery, the plaintiff cannot recover against that defendant." 296 Minn. 244, 207 N. W. 2d 708.

It is true that this court has often held that where two or more persons are guilty of negligence and cause damage to another, which damage is incapable of being apportioned among the negligent parties, the negligent parties are jointly and severally liable. Mathews v. Mills, 288 Minn. 16, 178 N. W. 2d 841 (1970); Doyle v. St. Paul Union Depot Co. 134 Minn. 461, 159 N. W. 1081 (1916). As stated by this court in Mathews v. Mills (288 Minn. 21, 178 N. W. 2d 844):

"\* \* \* It has always been the law of this state that parties whose negligence concurs to cause an injury are jointly and severally liable although not acting in concert. \* \* \* [Such a rule, however,] becomes viable only upon a determination of where the burden of proof of capability of apportionment lies. In this respect, we feel that the rule adopted in Restatement, Torts (2d) § 433 B(2), is the one by which we should be governed. This section provides:

" 'Where the tortious conduct of two or more actors has been

---

[2] The Wisconsin statute was amended in 1971 so as to permit recovery if plaintiff's negligence does not exceed that of defendant.

combined to bring about harm to the plaintiff, and one or more of the actors seeks to limit his liability on the ground that the harm is capable of apportionment among them, the burden of proof as to the apportionment is upon each such actor.' "

It is essential to note that such rule of joint and several liability applies only when plaintiff is free from negligence. As pointed out in the Mathews case (288 Minn. 22, 178 N. W. 2d 845), "the rule is a result of a choice made as to where a loss due to failure of proof [as to the apportionability of damages] shall fall—on an innocent plaintiff or on defendants who are clearly proved to have been at fault." Such is not the case before us since the plaintiff, deemed 10-percent negligent by the jury, is also at fault in causing the single, indivisible injury.

In no sense were Armour and Van Hoven engaged in a joint enterprise. Although in physical proximity to each other, the Armour slaughtering plant was entirely separate from the Van Hoven rendering operation. To be sure, both bordered on the same street but that is no proof of a joint enterprise. As a result, on no theory do we believe there can be joint and several liability in a case of this kind even if comparative negligence applies at all as to defendants.

The only theory on which defendants Armour and Van Hoven could be held jointly liable would be that they together left substances from which plaintiff could have contracted this disease in places where plaintiff came into contact with such substances. The evidence fails to support any such theory. The only credible evidence in the case is that plaintiff came into contact with a carcass of an animal when on Van Hoven property. If, as plaintiff contends, both defendants were responsible for creating a situation from which plaintiff could have contracted the disease, they should have been held equally responsible. The jury did not find that to be a fact. It is incredible that Brucella microbes could have entered plaintiff's body from different sources and thereafter combined to cause the disease. The only tenable conclusion is that the microbes entered plaintiff's body from one source or

the other, not from two or more different sources. Further, no request was made by plaintiff that the case be submitted to the jury on the theory of joint liability.

Comparative negligence as between defendants is based on the conclusion that the negligence of two or more tortfeasors combined to cause the damages plaintiff seeks to recover. The evidence in this case simply does not permit such finding.

The mere fact that a difficulty exists in establishing causal relationship between the alleged negligence of a defendant and plaintiff's alleged damages is no justification for permitting recovery against a defendant on evidence that is, at its best, pure speculation and conjecture. There must be some credible evidence from which an inference of negligence is permissible.

To further complicate matters, plaintiff has settled with Van Hoven, the defendant which the jury found was mainly responsible for plaintiff's damages. In the absence of joint liability, the finding of the jury that plaintiff and Armour were guilty of the same percentage of negligence absolves defendant Armour of any liability.

Plaintiff also complains about the failure of the court to permit him to comment to the jury on the effect of the verdict under Minn. St. 546.14, which is now superseded by our amended Rule 49, Rules of Civil Procedure. Minn. St. 604.01, subd. 4, provides:

"Except in an action in which settlement and release has been pleaded as a defense, any settlement or payment referred to in subdivisions 2 and 3 shall be inadmissible in evidence on the trial of any legal action."

In light of the settlement effected by plaintiff with defendant Van Hoven, it would be difficult, if not impossible, to explain to the jury the effect of the verdict without disclosing to the jury that there had been a settlement of the case between plaintiff and Van Hoven. We think the court was within its permissible discretion in refusing to permit such comment under these circumstances.

Plaintiff also contends that the court should have allowed him to recover for medical expenses under Minn. St. 176.061, subd. 5. Defendant claims that under § 176.061, subd. 7, the employer or its workmen's compensation carrier is the only party that has a cause of action to recover medical expenses from a third-party defendant. Subd. 7 grants a separate additional cause of action which may be asserted either in a separate action commenced in the name of the employer or in an action commenced by the employee under subd. 5. If the employer's cause of action for medical expenses is paid, it is barred in the employee's action against the third party. All that is required by subd. 7 is that, if asserted in an action brought by the employee, "the cause of action shall be separately stated, the amount awarded thereon shall be separately set out in the verdict, and the amount recovered * * * for medical expenses shall be for the benefit of the employer to the extent that the employer has paid or will be required to pay for medical treatment of the injured employee." Quite clearly, the employer could maintain a separate action for the medical expenses which it had paid. Similarly, the employee could include medical expenses in his cause of action against the third party, and if medical expenses were recovered, the employer would be subrogated to the rights of the employee to the extent that the employer had paid such expenses. The court did require the jury in its special verdict to find the amount of such medical expenses. In the absence of a showing that the expenses so found by the jury exceeded those paid by the employer, the court's ruling was probably in error. However, we fail to see how plaintiff has been prejudiced by it.

On the record before us, the order of the trial court must be affirmed.

Affirmed.