Luverne R. RUBERG, et al.,
Respondents,

v.

SKELLY OIL COMPANY, Appellant,

Keith C. Engen and Carl Lundgren, co-partners, d.b.a. Lundgren and Engen Excavating, Respondents,

Applit Zimm, d.b.a. Standard Heating Company of Duluth, Respondent.

No. 49793.

Supreme Court of Minnesota.

Sept. 5, 1980.

Trenti, Saxhaug, Berger, Carey, Roche, Stephenson & Richards, and Tom Carey, Virginia, for appellant.

Robins, Davis & Lyons and Michael V. Ciresi, St. Paul, and Robert M. Wattson, Minneapolis, for respondent Ruberg, et al.

Hanft, Fride, O'Brien & Harries, Duluth, for respondent Engen and Lundgren, etc.

Johnson, Fredin, Killen, Thibodeau & Seiler, Duluth, for respondent Applit Zimm.

Heard before SHERAN, C. J., OTIS, and PETERSON, JJ., and considered and decided by the court en banc.

OTIS, Justice.

Plaintiff/respondent Luverne R. Ruberg was injured in a gas explosion on March 2, 1973. Thereafter he commenced this negligence action against defendants/respondents Keith C. Engen and Carl Lundgren, doing business as Lundgren and Engen Excavating (hereafter Lundgren and Engen), and defendant/appellant Skelly Oil Company (hereafter Skelly). Skelly subsequently brought in Thermo Products, Inc., and Applit Zimm, doing business as Standard Heating Company of Duluth, as third-party defendants. The claim against Thermo Products was later dismissed.

After a trial that extended over four weeks, a jury attributed causal negligence fifty-five percent to Lundgren and Engen, thirty percent to Skelly, and fifteen percent to plaintiff. Zimm was found not negligent. The court's order for judgment was filed on July 25, 1978. Shortly thereafter Skelly moved for judgment notwithstanding the verdict, amended findings, or a new trial. The motions were denied. Skelly appeals. We affirm.

Before reaching the merits of this appeal, however, we must resolve a question of appealability. Skelly appealed from the order for judgment, which was then

nonappealable. In addition, while Skelly's notice of appeal was filed seven days after its post–trial motions were denied and judgment was entered, it was not filed within thirty days after notice of the filing of the order for judgment was served. As an appeal from an order, therefore, this appeal was untimely. Under the rules of civil appellate procedure that apply to this case, the appeal is clearly defective.

■ We note, however, that as of April 9, 1979, our rules have been amended to permit appeals from orders for judgment. Minn.R.Civ.App.P. 103.03(a). In addition, hereafter, in the spirit of that rule, where an appeal from an order for judgment has been taken within the time to appeal from the judgment, we will treat it as an appeal from the judgment.

■ Here Skelly appealed from the order for judgment within the time for an appeal from the judgment. Moreover, the facts and circumstances of this case persuade us that Skelly was not inexcusably dilatory and that justice would be better served by reaching the merits of the case. Therefore, even though the appeal is defective, we will take jurisdiction under Minn.R. Civ.App.P. 102. *See LeRoy v. Marquette Nat'l Bank of Minneapolis*, 277 N.W.2d 351, 353 (Minn.1979). As this appeal will be treated as an appeal from the judgment, we may review any issue raised by appellant on a motion for a new trial as well as any challenge to the sufficiency of the evidence. Minn.R.Civ.App.P. 103.04(2).

The record discloses that in 1969 plaintiff purchased Lakeland Court, a property near Duluth. The property, which had been vacant a few years, contained a lodge, a shower building, and several cabins. Lakeland Court was serviced by a liquid propane gas system. A 500–gallon tank and regulator were located at the northern end of the property with a central pipe running south to the lodge and shower buildings. A short distance from the tank, pipes running east and west were connected to the central line. The gas pipe, some sections copper and others steel, lay partly underground and partly above ground.

In 1970 plaintiff tore down part of the lodge, demolished or sold several cabins on the west side of the property, and capped the west gas line.

Plaintiff and his wife lived off the premises until September 1972. In summer 1972 he began building directly north of the lodge a basement intended to serve as the foundation for a new residence. Lundgren and Engen were employed as excavators. Plaintiff discussed with Carl Lundgren the location of gas and water lines and the capping of the central gas line. Later, while Lundgren staked out the excavation site, plaintiff, using a plug and cement, capped the central line sixteen to twenty feet from the excavation site. He tested the plug for leaks with a soap and water solution. Two to three feet of the capped pipe remained above ground and visible.

Plaintiff never spoke with Keith Engen prior to the excavation nor was he present when Engen began digging. As Engen dug the hole for the basement, he dumped the excavated dirt and a concrete slab onto the capped gas line. Plaintiff did not discuss with Lundgren and Engen the placement of excavated soil either before or after the excavation. The excavation pile remained where it was deposited until after the explosion.

Construction continued on the new residence which was targeted for occupancy in spring 1973. In late November 1972 and in February 1973, the Rubergs, then living in the lodge, ran out of gas. On the first occasion, late in the evening, plaintiff's wife Joanne commented to Ken Smith, Skelly's delivery and serviceman, that she thought their gas consumption had been unusually large. Smith responded that poor insulation could be the cause but that the system could be tested in the spring.

On February 27, 1973, four days before the explosion, plaintiff detected an odor like varnish remover in the basement of his new home, which was almost ready for occupancy. Skelly was not informed of the odor. A plumber was called, but no plumbing problems were found.

At the same time an oil–fired furnace that had been hooked up the previous month was causing sooting problems. An employee of Applit Zimm checked the furnace on February 28 and March 1. On the second occasion he told plaintiff to turn the furnace off that night and on again the next morning.

When plaintiff turned the furnace on the next morning, there was an explosion. Plaintiff suffered second– and third–degree burns over forty percent of his body.

An expert called by plaintiff testified at trial that gas leaked from a fracture of the southernmost part of the capped central gas line. From its nature, he felt that the fracture probably occurred when a heavy object was pushed or pulled across the pipe. The fracture could have been produced by heavy equipment such as that used by Lundgren and Engen or by a heavy load dropped onto the pipe.

Another expert testified that leaked propane migrated through the clay soil and entered plaintiff's basement through concrete blocks and a drainage tile system; in the process, he testified, the gas may have lost its odorant, picked up the order of the surrounding soil, and, thus, escaped detection.

■ 1. Skelly contends first that the trial court committed prejudicial error by charging the jury, at the request of Lundgren and Engen, as to superseding cause. The jury were correctly told:

> For a cause to be a superseding cause, all the following elements must be present:
>
> 1. Its harmful effects must have occurred after the original negligence.
>
> 2. It must not have been brought about by the original negligence.
>
> 3. It must actively work to bring about a result which would not otherwise have followed from the original negligence.
>
> 4. It must not have been reasonably foreseeable by the original wrongdoer.

The instruction was read twice with the court cautioning the jury that the double reading did not reflect the importance of the issue. The following morning the jury returned asking for another explanation of superseding cause and how it related to the special verdict questions. After a discussion between court and counsel, the instruction was read a third time without further comment. The jury returned its verdict that afternoon.

Skelly contends that giving an instruction regarding superseding cause was error because there was no evidence reasonably tending to prove its existence. It contends that the instruction may have confused the jury and caused them to return a verdict that incorrectly insulated plaintiff from accountability for some of his negligent acts early in the chain of causation because of a subsequent negligent act of another party.

■ We feel no need to determine whether giving the instruction was error because, if error, we feel it was harmless. The instruction was delivered at the request of the excavators Lundgren and Engen, who were also the only parties to argue the issue. The jury's attribution of fifty–five percent causal negligence to Lundgren and Engen negates any possibility that they accepted the argument. Beyond that, we feel that the jury's verdict was equitable and fully supported by evidence in the record. Therefore, whether or not the instruction was error, we deem it harmless.

■ 2. Skelly contends secondly that as a matter of law, it was not negligent or was less negligent than plaintiff. Skelly's alleged negligence consists of a failure to act. An omission constitutes negligence only where there is a duty to act affirmatively.

■ A supplier of gas must exercise a degree of care commensurate with the danger in a situation. *Wilson v. Home Gas Co.*, 267 Minn. 162, 171, 125 N.W.2d 725, 731 (1964). With regard to that duty, we have said:

> It may be generally stated that, where a gas company does not install or own the service lines on private property, and exercises no control over them, it is not responsible for the condition in which

they are maintained and is not liable for damages caused by a leak therein of which it does not have notice. And a gas company, in the absence of notice of defects in the service lines, is not required to make inspections of the lines on private property when the lines are not owned by it or are under its control. *Fabbrizi v. Village of Hibbing*, 242 Minn. 464, 468, 66 N.W.2d 7, 9–10 (1954) (emphasis and footnotes omitted). Liability for damages caused by a gas leak exists where the gas supplier, having reasonable notice of an existing or potential danger, negligently performs an inspection or repair, or fails to inspect, repair, or shut off the gas. *See Bellefuil v. Willmar Gas Co.*, 243 Minn. 123, 127, 66 N.W.2d 779, 783 (1954).

■ Notice that will trigger a gas supplier's duty exists where the supplier is in possession of facts that would suggest to a person of ordinary care and prudence that some part of the gas system is leaking or is otherwise unsafe for the transportation or use of gas. *Id.* at 128, 66 N.W.2d at 783.

■ In this case the evidence, taken in the light most favorable to the verdict, indicates that plaintiff's wife told Skelly's delivery and serviceman that gas consumption in late 1972 had dramatically and inexplicably increased from the prior year. Depending on surrounding circumstances, notice of unexplained, excessive gas consumption may be sufficient notice to trigger a gas supplier's duty to make a prompt inspection of a customer's gas system and to take whatever other action may be necessary to insure the safety of persons and property that might be endangered. With the foregoing in mind, we hold that the jury's verdict was consistent with both the law and the evidence.

3. Skelly contends finally that if it is liable to plaintiff, it should not be held jointly and severally liable with Lundgren and Engen for the entire damage award. The comparative negligence statute, Minn. Stat. § 604.01 (1976),[1] applies and states in part:

When there are two or more persons who are jointly liable, contributions to awards shall be in proportion to the percentage of negligence attributable to each, provided, however, that each shall remain jointly and severally liable for the whole award.

■ Because plaintiff suffered an indivisible injury and Skelly is liable to plaintiff, Skelly is *jointly* liable with Lundgren and Engen within the meaning of the statute. *See Tolbert v. Gerber Indus. Inc.*, 255 N.W.2d 362 (Minn.1977); Note, *Contribution and Indemnity–An Examination of the Upheaval in Minnesota Tort Loss Allocation Concepts*, 5 Wm. Mitchell L.Rev. 109, 110 n.1 (1979).

Skelly, however, relies on language from *Kowalske v. Armour & Co.*, 300 Minn. 301, 220 N.W.2d 268 (1974), and argues that, because plaintiff was not free from negligence, the rule of joint and several liability does not apply and Skelly should be liable for only a portion of the damage award.

■ *Kowalske* involved a plaintiff who contracted a disease from infected meat carcasses. A jury found the plaintiff ten percent negligent, one defendant, Van Hoven, eighty percent negligent, and the other defendant, Armour, ten percent negligent. Prior to the verdict, however the plaintiff settled with Van Hoven. Thereafter, the plaintiff tried to collect the remainder of his damages from Armour, arguing that Armour was jointly and severally liable for the damage award. This court's opinion discussed several aspects of the case. However, Armour was not engaged in a joint enterprise and, therefore, because Armour's negligence was not greater than plaintiff's, the comparative negligence statute compelled the conclusion that Armour was not *in any respect* liable to the plaintiff. *Id.* at 309, 220 N.W.2d at 273. That conclusion is reflected in the *Kowalske* decision. While some language in *Kowalske* might imply

1. The statute was amended in several respects by 1978 Minn. Laws ch. 738, §§ 6, 7. The comparative fault statute, Minn.Stat. § 604.01 (1978) is no longer limited solely to negligence actions.

752

differently, with regard to the existence of joint and several liability, the existence and degree of a plaintiff's negligence is relevant only to determine whether individual defendants are liable to the plaintiff at all. Once the individual liability of each defendant has been established, all defendants liable to compensate the plaintiff for an indivisible injury are jointly liable and, therefore, pursuant to the statute each remains jointly and severally liable for the entire award. To the extent dictum in *Kowalske* implies anything to the contrary, it is overruled.

Affirmed.

AMDAHL, J., not having been a member of this court at the time of the argument and submission, took no part in the consideration or decision of this case.