IN RE GUARDIANSHIP OF ESTATE OF NETTIE HUDSON.
CECELIA PETERSON AND ANOTHER v. C. L. WILLYARD.[1]

January 18, 1952.

No. 35,567.

---

[1]Reported in 51 N. W. (2d) 103.

*Plato E. Sargent,* for appellants.

*H. J. Edison* and *Oscar C. Ronken,* for respondent.

THOMAS GALLAGHER, JUSTICE.

Appeal from an order of the district court of Dodge county denying the joint motion of Cecelia Peterson, daughter of Nettie Hudson, ward in these guardianship proceedings, and of James C. Sargent, special administrator of the estate of Dr. W. T. Corwin, deceased, formerly special guardian of the estate of Nettie Hudson, for amended findings or a new trial after findings and order for judgment allowing the final account of C. L. Willyard, general guardian of the estate of Nettie Hudson, and from the judgment entered pursuant to such findings. The hearing was on appeal from an order of the probate court of Dodge county also allowing such final account.

At the time of the hearing before the Dodge county probate court on the general guardian's final account, the claim of the special guardian for fees and expenses was in litigation in the Goodhue county courts. Notwithstanding this, the motion of the special guardian for a continuance of the probate court hearing pending determination of his claim was denied, and the general guardian's final account was allowed on January 8, 1948, without provision for allowance of the expenses of the special guardian. Subsequently, as a result of this court's decision in In re Guardianship of Hudson, 226 Minn. 532, 33 N. W. (2d) 848, the district court of Goodhue county, on March 12, 1949, adjudicated the amount due him and

directed the probate court of Goodhue county to settle and allow the amount specified. This was done by order of the probate court of Goodhue county dated August 20, 1949, before the present hearing in the district court of Dodge county on July 19, 1950, but subsequent to the probate court hearing there on January 8, 1948.

Prior to the hearing resulting in the order from which this appeal is taken, on motion of the general guardian, the district court of Dodge county dismissed the joint appeal of Cecelia Peterson and the special guardian from the order of the probate court of Dodge county of January 8, 1948, allowing the final account of the general guardian, on the ground that the bond on such appeal was insufficient. Subsequently Dr. Corwin died, and a special administrator of his estate was appointed. From the order dismissing the appeal from the order of the probate court, Cecelia Peterson *only* appealed to this court. The order of dismissal as to her was reversed here and the case remanded for further proceedings in Dodge county. In re Guardianship of Hudson, 228 Minn. 508, 37 N. W. (2d) 742.

Subsequently, at the district court hearing in Dodge county, it was held that failure of the special guardian or his representative to appeal from the order dismissing the appeal from the order of the probate court terminated the right of the special guardian or his representative to appear in the proceedings, and the hearing was confined to the issues presented by Cecelia Peterson only.

At the district court hearing, as in probate court, the general guardian's final account was challenged on three grounds, as follows:

(1) It had failed to include all the assets of the ward; (2) certain expenditures made by the general guardian to H. J. Edison, his attorney, for legal services rendered the ward constituted improper charges against the estate; and (3) no provision was made therein for payment of the fees and expenses of the special guardian incurred in Goodhue county, where the proceedings were first instituted. On this appeal, the same general issues are presented; and, in addition, we are asked to determine the propriety of the district court's order, made during the proceedings, which in effect

denied the special representative of the special guardian, then deceased, the right to appear therein.

The record indicates that since the appointment of the special guardian, who received none of the assets of the ward, the following sums have come into the hands of C. L. Willyard, general guardian, and H. J. Edison, his attorney, and are included in the general guardian's final account:

**C. L. Willyard**

| | |
|---|---|
| Cash from Farmers Security State Bank of Zumbrota (derived from sale of Goodhue county farm owned by the ward) | $4,883.84 |
| Cash from sale of ward's automobile | 250.00 |
| Cash received from sale of ward's homestead in Pine Island | 106.75 |
| Cash advanced by H. J. Edison, attorney for the ward | 50.00 |
| Cash advanced by H. J. Edison, attorney for the ward | 37.30 |

**H. J. Edison**

| | |
|---|---|
| Cash received on down payment on sale of homestead | 200.00 |
| Cash derived from monthly payments made on contract for deed on sale of homestead | 250.00 |
| Cash from Security State Bank of Pine Island | 879.46 |
| Check on Zumbrota bank | 100.00 |
| Cash from M. C. Edison and Hazel Edison | 50.00 |
| Cash received directly from ward | 270.00 |
| Total | $7,077.35 |

The final account of the guardian, together with the exhibits attached thereto, indicates that the above sums were expended by the guardian and his attorney, H. J. Edison, as follows:

**Expenditures by C. L. Willyard**

| | |
|---|---|
| Myrtle Babcock for care of ward | $1,250.00 |
| Cora Dahle for care of ward | 285.00 |
| Medical and drugs | 99.70 |

| | |
|---|---:|
| Cash allowances made to ward and clothing purchased for ward | 35.00 |
| Bond premiums | 105.00 |
| Appraisal fees | 6.00 |
| Court costs | 2.50 |
| Expense of litigation pending | 34.88 |
| Judgment paid National Bank of Dodge county | 42.72 |
| Miscellaneous | 162.52 |
| Security Bank, Pine Island | 165.00 |
| Bank charges, Kasson State Bank | 2.75 |
| Rockne & Rockne, attorneys' fees | 290.00 |
| O. C. Ronken, attorney's fees | 207.00 |
| C. L. Willyard | 130.00 |
| H. J. Edison, costs | 129.75 |
| H. J. Edison, advance | 37.30 |
| H. J. Edison, fees | 2,142.77 |
| H. J. Edison, expenses | 200.00 |

**Expenditures by H. J. Edison**

| | |
|---|---:|
| Paid to Nettie Hudson, ward | 927.00 |
| Paid for court costs, recording fees, miscellaneous legal expenses | 432.57 |
| Paid for miscellaneous general expenses for ward | 270.66 |
| Bond premium | 100.50 |
| Expenditures unaccounted for | 18.73 |
| Total | $7,077.35 |

These figures show, in addition to legal expenses and counsel fees paid to outside counsel, that H. J. Edison, attorney for the general guardian, received or was paid the total sum of $2,342.77 for fees. It is this sum which is challenged by appellants as unreasonable and unnecessary and an improper charge against the assets of the ward.

It is first contended by appellants that the general guardian failed to marshal all the assets of his ward's estate. This claim

centers principally on the sale of a Goodhue county farm formerly owned by the ward. There is testimony that this property was sold on January 24, 1944; that the transaction was handled by Rockne & Rockne as attorneys for the ward during the time when she had been restored to capacity; that the total sales price of the property was $5,700.75; that the proceeds therefrom were deposited in the Farmers Security State Bank; that litigation developed with reference thereto between the special guardian and the general guardian; that ultimately the district court of Goodhue county directed that the remaining proceeds of the sale be turned over to the general guardian, subject to the claims of the special guardian for fees and expenses; and that at that time the funds remaining on deposit in the bank amounted to $4,883.84, which sum was turned over to the general guardian and set forth and included in his final account. There is some testimony, not too clear, that the balance of the proceeds of the sale may have been paid out in settlement of a divorce proceeding then pending against the ward. The sum of $600 is mentioned in this respect. The evidence is not too definite as to what became of this difference, but the record is clear that when the general guardian was appointed only the sum of $4,883.84 remained in this transaction and that he received and accounted for this amount in his final account.

With respect to the funds on hand in the Pine Island State Bank, these appear to be accounted for in Edison's statement acknowledging receipt of $879.46 from this source. Likewise, the proceeds from the sale of the homestead in Pine Island seem fully accounted for. The sales contract thereon indicates a selling price of $550. The final account indicates that Willyard, the general guardian, received and accounted for $106.75 of this sum, and that Edison received and accounted for $450 of this sum, the difference being probably chargeable to interest.

In the absence of any definite proof that there are other sums which could be claimed by or were accessible to the general guardian, we must hold that the record fails to establish that any of the

assets of the estate had not been properly marshaled by the general guardian.

■ The second challenge made to the final account relates to the sums charged against the estate for attorney's fees paid to or received by H. J. Edison totaling $2,342.77. It should be noted here that the total assets handled by the general guardian and his attorney amounted to $7,077.35, and that of this amount the total sum of $3,687.69 was expended for attorney's fees, court costs, bonds, and similar expenses connected with litigation. This sum appears out of all proportion to the expenses which should be involved in an estate of this size. A great portion of the litigation, including three appeals to this court, involved a dispute between the special guardian and the general guardian over the former's fees and expenses, a matter which it would seem could have been fairly and equitably settled at a small percentage of the amount expended for costs and fees. This is not in the nature of a criticism of the charges made for legal fees by Mr. Ronken or by Rockne & Rockne for services rendered by them, which do not appear to be unreasonable. The criticism is directed rather at the handling of an estate of this size and its consumption in a large measure by litigation of little benefit to the ward.

With reference to the charges made by H. J. Edison totaling $2,342.77, the record shows the following: An itemized statement covering the period between January 18, 1944, and June 4, 1945, was rendered by Mr. Edison, which included charges for telephone calls, travel expense, two district court hearings, one at Red Wing and one at Kasson, and for legal matters at Owatonna, Pine Island, Rochester, Zumbrota, St. Paul, and Mantorville. Included therein were mileage charges for 68 trips, as well as specific charges for attorney's fees for the period described, as follows:

| | |
|---|---:|
| Contested probate court hearings at Red Wing on five occasions, for each of which the sum of $50 is charged | $250.00 |
| Services in district court in securing a divorce settlement, including a trip to St. Paul | 150.00 |
| Services on contested district court hearing at Red Wing | 50.00 |

| | |
|---|---:|
| Services on various Goodhue county district court proceedings | 225.00 |
| Supreme court hearing and briefing services therein | 350.00 |
| District court hearings at Owatonna | 75.00 |
| Making a total of | $1,100.00 |

This would appear to take care of all charges made for travel, office work, and appearances in court up to that date. However, the bill next sets forth charges for services rendered between the same periods, including a charge of $560 for 56 trips to various cities and villages other than trips to hearings, and an additional charge of $500 for 15 days' office work.

It is appellants' contention that the itemized statement for $1,100 covered all legal services performed by H. J. Edison up to October 24, 1945, and that the additional charges were not authorized, since the services indicated therein had already been paid for. As to whether his itemized charges as set forth were in full for the particular items referred to, Mr. Edison repeatedly answered in substance, "I don't know as to that," or "I don't recall the instance at the time." In particular, he was asked:

"Q. * * * do you claim that these items, whether they specify for these different hearings, special hearings, and so forth, did not represent your full charge for those items?

"A. I don't know. The account speaks for itself, Mr. Sargent."

When asked about the 56 additional trips, he answered again, "I don't know." In his itemized statement he had charged for some of his trips but "did not know" whether he had put all of them down.

There is general testimony by Mr. Edison that in his opinion the sums indicated for legal services were fair and reasonable. However, in view of the vagueness of the record on this aspect of the case, and in view of the fact that the itemized statement of Mr. Edison seems to cover specific charges for the work performed by him, it cannot be determined whether the general charges subsequently entered on the statement related to or covered· the same

services previously charged for. Mr. Edison was unable to clarify this issue in his testimony, and we feel for this reason that the case should be remanded for further evidence on this point, and for a specific finding as to the exact services rendered by Mr. Edison for the estate, the need therefor, and the reasonable value thereof.

■ With reference to the fees and expenses of the special guardian incurred in Goodhue county, it appears that upon the failure of such special guardian to perfect his appeal from the order dismissing his appeal from probate court his rights in the matter terminated. It is obvious that his interests in establishing certain charges against the estate would be adverse to those of Cecelia Peterson, daughter of the ward, who perfected the appeal and whose interests are in the residue, if any, of the estate. In consequence, the situation is not similar to those involving a joint judgment or decree against several parties where the effect of an appeal by one, without the concurrence of the others, carries up the whole case so that a reversal inures to the benefit of all. See, 4 C. J. S., Appeal and Error, § 393; State ex rel. Larwill v. Vail, 25 Ohio C. C. (N. S.) 408; Lee v. Powell Bros. & Sanders Co. Ltd. 122 La. 639, 48 So. 134; St. John v. Andrews Institute for Girls, 192 N. Y. 382, 85 N. E. 143; Motor Terminal & Transp. Co. v. Simmons, 28 Ala. App. 190, 180 So. 597; Kelly v. Marcade (La. App.) 180 So. 174.

Ordinarily, an interested party who does not appeal from a judgment or order affecting his rights does not benefit by the appeal of another party likewise affected by such judgment or order, but whose interests therein are different from his. Estate of Onstad, 224 Wis. 332, 271 N. W. 652, 109 A. L. R. 630; Bice v. Holmes, 309 Mich. 110, 14 N. W. (2d) 800.

Reversed and remanded for further proceedings consistent herewith.