## PATRICIA PARLE v. HENRY BOOS DENTAL LABORATORIES, INC., AND ANOTHER.

153 N. W. (2d) 344.

October 6, 1967—No. 40,428.

*Tyrrell, Jardine, Logan & O'Brien* and *Jon L. Levy,* for relators.
*Gerald B. Forrette,* for respondent.

OTIS, JUSTICE.

The respondent, Patricia Parle Osmonson, has been awarded workmen's compensation as a result of tuberculosis which she contracted while employed by relator Henry Boos Dental Laboratories, Inc. Boos and its insurer seek review of a determination by the Industrial Commission that Mrs. Osmonson's disability was an occupational disease.

Although relators challenge the sufficiency of the evidence to support a finding that Mrs. Osmonson contracted tuberculosis from fellow workers, we do not find it necessary to consider that question. Assuming this was the source of her infection the only issue is whether our decision in Gray v. City of St. Paul, 250 Minn. 220, 84 N. W. (2d) 606, requires an affirmance. We hold that it does not.

Mrs. Osmonson was first employed by the Boos company in June 1962. During the following year she worked in the same office or

laboratory with three other employees, Charles Brimer, Richard Christenson, and Sherlyn Perrault, who were subsequently found to be seriously infected with tuberculosis. Her contacts with Brimer and Christenson were during coffee breaks, luncheon, and on the elevators. They were casual and sporadic. Her duties did not otherwise require that she associate with them. However, she did work in the same area with Mrs. Perrault, separated by a distance of only 10 or 20 feet.

Apart from the exposure to other infected employees, there is no evidence that any of the atmospheric or working conditions in the Boos Laboratories were conducive to contracting tuberculosis. The area in which Mrs. Osmonson worked was some 110 feet in length, 60 feet in width, and 10 feet in height. The air was completely recirculated six or seven times an hour. There were no extremes or variations in temperature and no dust, gas, or smoke which might increase the chance of infection. Nevertheless, the referee found that Mrs. Osmonson's exposure to tuberculosis was peculiar to her occupation, differing from the exposure of the general public, and the disease "was due to causes in excess of the hazards ordinary of employment." This determination was affirmed on appeal to the commission.

The relevant provisions of the statute are contained in Minn. St. 176.011, subd. 15, as follows:

" 'Occupational disease' means a disease arising out of and in the course of employment peculiar to the occupation in which the employee is engaged and due to causes in excess of the hazards ordinary of employment and shall include undulant fever. Ordinary diseases of life to which the general public is equally exposed outside of employment are not compensable, except where such diseases follow as an incident of an occupational disease, or where the exposure peculiar to the occupation makes such disease an occupational disease hazard. A disease arises out of the employment only if there be a direct causal connection between the conditions under which the work is performed and if the occupational disease follows as a natural incident of the work as a result of the exposure occasioned by the nature of the employment. An employer is not liable for compensation for any occupational disease which cannot be traced to the employment as a direct and proximate cause and is not

recognized as a hazard characteristic of and peculiar to the trade, occupation, process, or employment or which results from a hazard to which the workman would have been equally exposed outside of the employment."

That statute was construed and applied in favor of the employee in the Gray case. There the employee contracted tuberculosis as the result of a massive and protracted exposure to an infected fellow police officer with whom he was assigned to duty in a squad car. The medical testimony on which the court relied in affirming an award was as follows (250 Minn. 232, 84 N. W. [2d] 614):

"A. Well, a chance meeting, persons standing next to each other, always presents the possibility of transmission of infection occurring at that time. But taking that as compared with close contact, close proximity of two persons within an enclosed or semi-enclosed environment where there is opportunity for repeated inoculation of the air and the atmosphere in which each person is breathing, the opportunity and probability of infection is far greater under the latter circumstances; in fact, it is so great that when we find a situation like that, where a person has prolonged and repeated exposure, we sometimes refer to it as superinfection, meaning that they get probably, and of necessity, a larger inoculum or number of organisms than is usual."

We held that (250 Minn. 234, 84 N. W. [2d] 615) "[s]ince this was a hazard distinguishable in character from the general run of occupations or that of the policeman ordinarily, therefore officer Gray's tuberculosis as contracted was in fact 'peculiar to his occupation.'"[1] We concluded by saying (250 Minn. 235, 84 N. W. [2d] 616):

"* * * [T]he contraction of tuberculosis may come within the definition of an occupational disease if under the factual situation at the time it is a disease which is a natural incident of a particular occupation and attaches to that occupation a hazard which distinguishes it from the

[1] See Paider v. Park East Movers, 25 App. Div. (2d) 62, 267 N. Y. S. (2d) 12, which reached a contrary result.

usual run of occupations and is in excess of that attending employment in general."

There is no evidence that under the facts of this case tuberculosis is "a natural incident" of employee's occupation or attaches to it "a hazard which distinguishes it from the usual run of occupations," or "is in excess of that attending employment in general." Unlike the working conditions which confronted Officer Gray which required that he be closely confined for long periods of time in immediate proximity to an infected employee, Mrs. Osmonson's work area was in a large well-ventilated laboratory where she sat some distance from other employees. Her disability resulted entirely from exposure to an infected employee and was in no way connected with the hazards inherent in the employment.

Our decision in the Gray case reflects a solicitous legislative concern for police officers because they are more likely to be exposed to a stratum of society which is peculiarly susceptible to disease than is the public generally.[2] The ruling in that case is limited to the unusual circumstances which there existed.

The facts of the instant case do not permit a finding that Mrs. Osmonson's disability resulted from a disease "recognized as a hazard characteristic of and peculiar to the trade," or from a cause "in excess of the hazards ordinary of employment" within the meaning of § 176.011, subd. 15. There was no evidence that the nature of her duties or the conditions under which she was required to work had any connection with her contracting tuberculosis. Her disability resulted from an exposure which might as readily have occurred outside of her employment. It was not peculiar to her occupation. Buckley v. Gallagher Bros. Sand & Gravel Corp. 300 N. Y. 447, 92 N. E. (2d) 38.

This case is unlike those in which an employee's duties bring her into physical contact with tools or instruments which greatly increase the opportunity for contracting tuberculosis. Decisions which hold compensable an infection resulting from the use of pipettes, telephone mouthpieces, and similar devices are therefore not applicable. Mason v.

---

[2] Minn. St. 251.051.

Y. W. C. A. of New York City, 271 App. Div. 1042, 68 N. Y. S. (2d) 510; Hovancik v. General Aniline & Film Corp., Ansco Div. 8 App. Div. (2d) 171, 187 N. Y. S. (2d) 28; 1A Larson, Workmen's Compensation Law, § 41.40.

The New York court in Harman v. Republic Aviation Corp. 298 N. Y. 285, 288, 82 N. E. (2d) 785, 786, denied recovery in a case indistinguishable on the facts from the case at hand. In so doing it held:

"* * * An ailment does not become an occupational disease simply because it is contracted on the employer's premises. It must be one which is commonly regarded as natural to, inhering in, an incident and concomitant of, the work in question. There must be a recognizable link between the disease and some distinctive feature of the claimant's job, common to all jobs of that sort. * * *

"* * * In no sense can it be said that tuberculosis was 'the natural and unavoidable result of the conditions of the employment' in which he was engaged. * * * Claimant's case—contracting tuberculosis in a well-aired factory—is not at all similar to that of a diver who contracts bends, a miner stricken with silicosis, a hospital nurse infected by some communicable disease * * * or that of a telephone operator disabled from tuberculosis as a result of using the same telephone as an ill fellow telephone operator. * * *

* * * * *

"* * * The hazard that rendered claimant subject to the disease was [fellow employee] and not any condition that inhered in the nature of the employment itself. Any one, whether supervisor, laborer, factory hand or clerical worker, in any field of work, in any occupation or employment, whether factory, store or office, may contract tuberculosis, given a fellow worker already ill with that disease. No peculiarity of claimant's job induced the disease or heightened the chance of infection; workers in other occupations, carried on under similar conditions, would have been just as likely as claimant to fall victim to the ailment if a [fellow employee] were about. As thus becomes evident, claimant's disease resulted not from the ordinary and generally recognized hazards incident to a particular employment, but rather from the general risks common

to every individual regardless of the employment in which he is engaged."

We are persuaded by the New York court's reasoning and hold that the decision of the Industrial Commission must therefore be reversed.

Reversed.