528 N.W.2d 869 (1995)
R.W., Judgment Creditor, Respondent,
v.
T.F., Judgment Debtor, and
North Star Mutual Insurance Company, Garnishee, Petitioner, Appellant.
No. C7-93-819.
Supreme Court of Minnesota.
March 31, 1995.
*870 R.D. Blanchard, Richard L. Pemberton, Jr., Jennifer Ball Mohlenhoff, Meagher & Geer, Minneapolis, for appellant.
Stewart Perry, Shawn Perry, Perry, Perry & Perry, Minneapolis, for respondent.
Wilbur W. Fluegel, Sieben, Grose, Von Holtum, McCoy & Carey, Ltd., Minneapolis, for amicus curiae MN Trial Lawyers Ass'n.
Kay Nord Hunt, Lommen, Nelson Cole & Stageberg, Minneapolis, for amicus curiae Ins. Federation of MN.
Heard, considered and decided by the court en banc.

OPINION
GARDEBRING, Justice.
This case involves the applicability of the intentional injury exclusion of a standard homeowner's policy to a claim based on the transmission of genital herpes.
T.F. was insured under a homeowner's policy issued by North Star Mutual Insurance Company ("North Star") effective July 9, 1983 through July 9, 1984. On March 17, 1984, T.F. had unprotected sexual intercourse with a woman. Within a few days he *871 noticed several genital sores. T.F. did not go to a doctor, and the genital sores disappeared after a few days. On May 4, 1984 and May 18, 1984, R.W. and T.F., both adults, engaged in unprotected consensual sexual intercourse at T.F.'s home. On May 23, 1984, R.W. noticed genital sores, and on May 27, 1984, she was diagnosed with genital herpes.
R.W. filed a complaint alleging that T.F.'s failure to inform her that he had herpes rendered her consent to the sexual act null and void, and that T.F. negligently transmitted genital herpes. T.F. requested North Star to defend against the complaint. North Star declined coverage and commenced a declaratory judgment action, disputing coverage based on the policy's accidental occurrence clause and "intentional act" exclusion. The district court granted summary judgment for North Star, on the basis of both the definition of accidental occurrence and the intentional injury exclusion.
T.F. appealed, but R.W. did not. In North Star Mutual Ins. Co. v. R.W., 431 N.W.2d 138 (Minn.App.1988), pet. for rev. denied, (Minn. Jan. 13, 1989), the court of appeals reversed and remanded the case, holding that North Star's duty to defend T.F. was arguably within the scope of coverage under the policy.
In September of 1988, after the appellate oral arguments but before an opinion had been issued, R.W. and T.F. entered into a Miller-Shugart agreement.[1] The agreement stated that T.F. agreed to an entry of judgment against him for $50,000, with the provision that R.W. could only collect from the proceeds of the homeowner's policy. Judgment was entered in accordance with the Miller-Shugart agreement and upon North Star's motion, the district court subsequently dismissed the declaratory judgment action and determined that R.W. should pursue her rights against North Star in a garnishment proceeding.
The district court denied North Star's motion for summary judgment based on res judicata, concluding that where the issues on appeal inure to the benefit of the non-appealing defendant, notions of common sense and justice prevent the doctrine from being invoked. The jury returned a special verdict form prepared by North Star which found:
1. T.F. knew or had reason to know that he was infected with genital herpes or another serious venereal disease before he engaged in sexual contacts with R.W.
2. T.F. knew or had reason to know before he engaged in sexual contacts with R.W. that he could transmit genital herpes or another serious venereal disease to R.W. by engaging in sexual intercourse with R.W.
3. R.W. contracted genital herpes from T.F. as a result of an accident.
4. T.F. did not expect or intend to infect R.W. with the genital herpes or another serious venereal disease.
5. T.F. did not fraudulently conceal from plaintiff that he was infected with genital herpes.
The district court denied North Star's post-trial motions and entered judgment against North Star pursuant to the terms of the Miller-Shugart agreement. The court of appeals affirmed, concluding that the jury permissibly found the transmission of herpes to have been an accident and that the intentional act exclusion was inapplicable because although the sexual act was intended, T.F. did not intend or expect to transmit herpes to R.W.
It has long been the law in Minnesota that a cause of action exists for the negligent transmission of serious infectious diseases. Skillings v. Allen, 143 Minn. 323, 173 N.W. 663 (1919); Parle v. Henry Boos Dental Lab., Inc., 278 Minn. 207, 153 N.W.2d 344 (1967); Kowalske v. Armour & Co., 300 Minn. 301, 220 N.W.2d 268 (1974). More recently the court of appeals has recognized the applicability of such a claim to the transmission of genital herpes.[2] We begin today *872 by specifically noting the existence of such a cause of action in Minnesota and its application to the facts of this case. However, the important issue before us today is whether, under these facts, the intentional act exclusion of a standard homeowner's insurance policy is applicable as a matter of law, consequently barring recovery for injuries associated with the transmission of genital herpes.[3]
The intentional act exclusion in T.F.'s policy provides:
This policy does not apply to liability: * * *
h. caused intentionally by or at the direction of any insured.
The law in Minnesota is well-settled that an intentional act exclusion applies only where the insured acts with the specific intent to cause bodily harm. State Farm Fire & Casualty Co. v. Wicka, 474 N.W.2d 324, 329 (Minn.1991); Woida v. North Star Mutual Ins. Co., 306 N.W.2d 570, 573 (Minn.1981). Specifically, the requisite intent demands that the insured intended the harm itself, not merely that the insured generally intended to act. Id.; see also Caspersen v. Webber, 298 Minn. 93, 99, 213 N.W.2d 327, 330 (1973). Thus, the appropriate question in this case is not whether T.F. intended to have sexual intercourse with R.W., but rather whether he intended to transmit herpes.
We have said that the necessary intent may be established either by proving an insured's actual intent to injure or by inferring such intent as a matter of law. See Wicka, 474 N.W.2d at 329. The record indicates, and the jury found, that T.F. did not have an actual desire or intent to give R.W. herpes. Therefore, we must consider whether this is a proper case for inferring the requisite intent as a matter of law.
We have considered this question in a number of other contexts and have established a general rule that the inference of intent arises when the nature and circumstances of the insured's act were such that harm was substantially certain to result. In Woida, we inferred intent where the insured had made plans with several other men to drive to a construction site, armed with highpowered rifles loaded with armor piercing bullets and shoot at a truck that they knew guards were sitting in. Woida, 306 N.W.2d at 573. Although the insured did not have actual intent to cause bodily injury, we concluded that "these actions are of such a calculated nature that we can infer an intention to inflict injury as a matter of law." Id. at 574. In Continental Western Ins. Co. v. Toal, 309 Minn. 169, 244 N.W.2d 121 (1976), we applied a similar rule where the insured intentionally prepared to commit an armed robbery and ultimately killed someone during the robbery. And in Iowa Kemper Ins. Co. v. Stone, 269 N.W.2d 885 (Minn.1978), we inferred intent as a matter of law when the insured wrapped a belt around his hand and struck the injured party on the head, knocking him to the ground and severely injuring him.
Further, we have inferred an insured's intent to harm in cases of nonconsensual sexual contact as a matter of law so as to preclude insurance coverage. For example, in Horace *873 Mann Ins. Co. v. Indep. School Dist. No. 656, 355 N.W.2d 413 (Minn.1984) intent was inferred as a matter of law where a female student in tenth grade was sexually assaulted by a basketball coach. More recently in Allstate Insurance Co. v. S.F., 518 N.W.2d 37, 38 (Minn.1994), we reiterated that "claims of nonconsensual sexual assault and battery invoke the intentional injury exclusion as a matter of law." See also Estate of Lehmann v. Metzger, 355 N.W.2d 425 (Minn.1984) (Sexual assault on an underage victim was ipso facto intentional conduct because one cannot negligently assault another).[4]
Although R.W.'s negligence claim is unlike earlier Minnesota cases in that it does not stem from criminal acts or an intentional tort, we find the underlying legal reasoning and policy considerations applicable to the issue before us. The determination to infer intent as a matter of law results from a case by case factual inquiry, not a bright line rule of law. More specifically, the facts of particular importance are those tending to show the likelihood of the harm  the greater the likelihood of the harm occurring, the more reasonable it is to infer intent.
In this matter, the jury found that T.F. knew or should have known that he had herpes and that he could transmit the disease through unprotected sexual intercourse. Under these circumstances, T.F.'s decision to engage in unprotected sexual intercourse constituted a serious threat of injury to R.W. that was substantially likely to occur, and did in fact occur. We conclude that T.F.'s transmission of herpes to R.W., while not necessarily malicious, was intentional as a matter of law. R.W.'s claim against North Star must fail because the intentional act exclusion precludes coverage.[5]
We also note that it is contrary to the purpose of insurance coverage and public policy to indemnify T.F.'s conduct in this case.[6] The jury found that T.F. knew he had herpes and knew that he could transmit it to R.W. Nevertheless, T.F. proceeded to have sexual intercourse without protection and without informing R.W. of his condition. We refuse to promote the abdication of personal responsibility by providing insurance coverage when an insured engages in unprotected sexual intercourse despite having knowledge that he is infected with herpes, a highly contagious and serious sexually transmitted disease.
We reverse the court of appeals and order judgment entered in favor of appellant because R.W.'s claim is not covered by T.F.'s homeowner's insurance policy as a matter of law.
R.W.'s claim is not covered by T.F.'s homeowner's insurance policy as a matter of law.
Reversed.
COYNE, J., took no part in the consideration or decision of this case.
NOTES
[1] A Miller-Shugart agreement allows a plaintiff to settle with an insured and enter into a stipulated judgment which creates a garnishment action for plaintiff to proceed against defendant's liability insurer. Miller v. Shugart, 316 N.W.2d 729 (Minn.1982).
[2] See generally, Milbank Ins. Co. v. B.L.G., 484 N.W.2d 52 (Minn.App.1992), pet. for rev. denied (Minn. July 16, 1992); R.A.P. v. B.J.P., 428 N.W.2d 103 (Minn.App.1988), pet. for rev. denied (Oct. 19, 1988); C.A.U. v. R.L., 438 N.W.2d 441 (Minn.App.1989).
[3] We affirm the court of appeals' holding that res judicata does not bar R.W.'s claim. While we are mindful of maintaining a consistent rule of law, we also recognize that res judicata is an equitable doctrine that must be applied in light of the facts of each individual case. We have previously held that because res judicata is a flexible doctrine, the focus is on whether its application would work an injustice on the party against whom estoppel is urged. See Johnson v. Consolidated Freightways, Inc., 420 N.W.2d 608, 613-14 (Minn.1988); AFSCME Council 96 v. Arrowhead Regional Corrections Bd., 356 N.W.2d 295, 299 (Minn.1984). The record indicates that T.F.'s appeal of the declaratory judgment required the court to address the critical issues concerning coverage as it related to both R.W. and T.F. Essentially, the appeal "carried up the whole case" so that the appeal inured to the benefit of the non-appealing party. In re Guardianship of Hudson's Estate, 235 Minn. 444, 452, 51 N.W.2d 103, 107 (1952); Wood v. Cullen, 13 Minn. 394 (1868). Based on these facts, it would be contrary to the notion and appearance of justice to invoke the doctrine of res judicata. Consequently, although R.W. did not properly file the appeal in this case, in light of these facts, we hold that T.F.'s appeal was sufficient to preserve R.W.'s underlying claim.
[4] R.W.'s complaint alleged both that the transmission of herpes was negligent and that T.F.'s failure to inform her of his herpes rendered her consent to the sexual act null and void. Although our holding does not depend upon this inconsistency, we note the illogic of alleging "negligence" in transmission of a sexually transmitted disease where the sexual act itself was unconsented. Query how an unconsented sexual contact gives rise to negligent injury?
[5] Although appellant also argues that the negligent transmission of herpes was not an "accident" within the policy limits, the applicability of the intentional act exclusion is determinative in this case. As a result, we decline to reach the issue of whether T.F.'s conduct constituted an accident within the terms of the policy.
[6] We note that although Minnesota does not have a statute that specifically makes the knowing transmission of a venereal disease a crime, there is a growing trend in states to enact laws that make it a crime to knowingly transmit or expose another to infection without informing the other person of the presence of the disease. See generally, N.Y. Public Health Law § 2307 (McKinney 1993); Cal.Health and Safety Code § 3353 (West 1992); Fla.Stat.Ann. § 384.24 (West 1993); Ga. Code Ann. § 31-17-1 to § 31-17-8 (1991); Ala. Code § 22-11A-21 (1987). This national trend toward the criminalization of the transmission of venereal disease illustrates the soundness of treating the knowing transmission of herpes as an intentional act.