**GRINNELL MUTUAL REINSURANCE COMPANY, Respondent,**

v.

**Bonnie EHMKE, et al., Appellants, Respondents,**

**Jeffrey EHMKE, Appellant.**

**Nos. C8–02–2247, C6–02–2263.**

Court of Appeals of Minnesota.

July 8, 2003.

Ken D. Schueler, Dunlap and Seeger, P.A., Rochester, MN, for respondent, Grinnell.

Charles A. Bird, Bird & Jacobsen, Rochester, MN, for appellants, Bonnie Ehmke, et al.

Charles James Suk, Suk Law Firm, Ltd., Rochester, MN, for appellant, Jeffrey Ehmke.

Considered and decided by STONEBURNER, Presiding Judge, TOUSSAINT, Chief Judge, and MINGE, Judge.

## OPINION

STONEBURNER, Judge.

The district court granted summary judgment declaring that respondent Grinnell Mutual Reinsurance Company's homeowner's policy issued to appellant Bonnie Ehmke does not provide coverage for an incident in which appellant Jessica Ehmke, a minor, injured her father, appellant Jeffrey Ehmke. Appellants Bonnie and Jessica Ehmke argue that the district court erred by concluding that the intentional-act and criminal-act exclusions in the policy preclude coverage. Because the undisputed evidence demonstrates that, as a matter of law, Jessica Ehmke did not intend to injure her father, we reverse and

remand for entry of summary judgment in favor of appellants Bonnie and Jessica Ehmke on the issue of coverage.

■ Appellant Jeffrey Ehmke challenges the district court's confirmation of an arbitration award in his separate arbitration agreement with Grinnell. Because Jeffrey Ehmke has not briefed or argued this issue, we consider it waived.

## FACTS

Jessica Ehmke, age 17, was standing next to the refrigerator arguing with her father, Jeffrey Ehmke, who was seated at the kitchen table. Jessica reflexively threw a refrigerator magnet at her father after he threw a can of beer that struck her in the leg. Despite the fact that Jessica Ehmke used her non-dominant hand for the admittedly retaliatory toss, the magnet unexpectedly struck Jeffrey Ehmke in the left eye. He is now blind in that eye.

Jeffrey Ehmke, who is Jessica Ehmke's non-custodial parent, sued Bonnie Ehmke [1] (Jessica Ehmke's mother) and Jessica Ehmke for his injuries. Respondent Grinnell Mutual Reinsurance Company insures Bonnie and Jessica Ehmke under a homeowner's policy issued to Bonnie Ehmke. Grinnell accepted Bonnie Ehmke's tender of defense under a reservation of rights and brought a declaratory judgment action, asserting that the intentional-act and criminal-act exclusions in the policy preclude coverage for this event.

For reasons not explained in the record, Jeffrey Ehmke, who is a party to the declaratory judgment action, entered into binding arbitration with Grinnell under Minn.Stat. § 572.08–30 (2002). The sole arbitration issue was "whether the acts of Jessica Ehmke * * * were sufficient to exclude coverage under [Grinnell's] policy

* * *." The arbitrator concluded that Jessica Ehmke's acts are excluded from coverage. Jeffrey Ehmke moved to vacate the arbitrator's award under Minn.Stat. § 572.19, subd. 1 (2002). The arbitrator denied the motion. Grinnell sought confirmation of the arbitrator's award in district court under Minn.Stat. § 572.18 (2002) and Minn. R. Gen. Pract. 114.09. The district court confirmed the arbitrator's award. Jeffrey Ehmke appealed confirmation of the arbitration award, but failed to assert any argument or authority to support his position on appeal. Because the issue was not briefed on appeal, we consider it waived. *Melina v. Chaplin,* 327 N.W.2d 19, 20 (Minn.1982). At oral argument, counsel for Grinnell candidly conceded that the arbitration award has no effect on Jeffrey Ehmke's right to pursue his tort action against Jessica Ehmke and no effect on whether there is coverage for Jessica Ehmke's act.

Grinnell and Bonnie and Jessica Ehmke filed cross-motions for summary judgment in the declaratory judgment action. The district court granted summary judgment to Grinnell based on the intentional-act and criminal-act exclusions in the policy. Bonnie and Jessica Ehmke appeal from that judgment.

## ISSUE

Can intent to injure be inferred, as a matter of law, from the act of a 17–year-old child's spontaneous retaliatory throwing of a small object at a parent who has struck the child with an item thrown during an argument?

## ANALYSIS

A motion for summary judgment should be granted when the pleadings, deposi-

---

1. It appears from the record that Jeffrey Ehmke's suit against Bonnie Ehmke was dismissed with prejudice for reasons unrelated to the declaratory judgment action.

tions, answers to interrogatories, admissions on file, and any affidavits show that there is no genuine issue of material fact and that either party is entitled to judgment as a matter of law. *Fabio v. Bellomo,* 504 N.W.2d 758, 761 (Minn.1993). On appeal from summary judgment, we ask (1) whether there are any genuine issues of material fact and (2) whether the district court erred in its application of the law. *State by Cooper v. French,* 460 N.W.2d 2, 4 (Minn.1990). The reviewing court views the evidence in the light most favorable to the party against whom judgment was granted. *Fabio,* 504 N.W.2d at 761.

■ Bonnie Ehmke's Home–Guard Policy issued by Grinnell contains an exclusion with respect to comprehensive personal liability protection coverage for intentional acts.

> We do not cover **bodily injury** or **property damage** resulting from the act of any **insured person** if a reasonable person would expect or intend **bodily injury** or **property damage** to result from the act.

The policy also contains a criminal-act exclusion, which provides:

> We do not cover **bodily injury** or **property damage** arising out of:
>
> "Intentional Loss," meaning loss arising out of or in the furtherance of any crime or offense of a violent nature or any act committed:
>
> a. by or at the direction of the **insured person;** and
>
> b. with the intent to cause a loss.

The underlying facts of the incident in which Jessica Ehmke injured Jeffrey Ehmke are undisputed. The issue is whether, as a matter of law, intent to injure can be inferred from those facts.

■ The language in an exclusionary provision is construed in accordance with the expectations of the insured party. *Am. Family Ins. Co. v. Walser,* 628 N.W.2d 605, 613 (Minn.2001). Exclusions are also construed strictly against the insurer. *Id.* The purpose of intentional-act exclusions is to exclude coverage for wanton and malicious acts by an insured, and therefore, the court may, absent evidence of specific intent to injure, infer intent to injure as a matter of law, based on the circumstances and nature of the insured's actions. *Id.; see also Iowa Kemper Ins. Co. v. Stone,* 269 N.W.2d 885, 887 (Minn. 1978) (stating intent may be established by proof of actual intent to injure or when character of act is such that intent to inflict injury can be inferred).

■■ The inference of intent to injure as a matter of law arises when the insured acted in a calculated manner and without remorse or when the insured's conduct was such that the insured knew or should have known that a harm was substantially certain to result. *Walser,* 628 N.W.2d at 613. "The mere fact that the harm was a 'natural and probable consequence' of the insured's actions is not enough to infer intent to injure." *Id.* (citing *Cont'l Western Ins. Co. v. Toal,* 309 Minn. 169, 174, 244 N.W.2d 121, 124 (1976)).

There is no direct evidence in the record that Jessica Ehmke expected or intended to injure Jeffrey Ehmke. Jessica Ehmke testified that she did not intend to injure her father. But the district court concluded that Jessica Ehmke's act constituted wanton and malicious behavior, based on (1) her testimony that she retaliated for having been struck on the leg by a can of beer thrown by her father by grabbing a magnet and "chucking" it at him; (2) her statement that she threw the magnet because she was concerned that her father might throw something else; and (3) her

acknowledgment that she could have left the scene after being hit with the beer can.

> There is no bright line rule as to when a court should infer intent to injure as a matter of law; rather, the determination is made through a "case by case factual inquiry"   .

*Walser,* 628 N.W.2d at 613 (citing *R.W. v. T.F.,* 528 N.W.2d 869, 873 (Minn.1995)). A review of the case law, however, leads us to conclude that the district court erred by concluding that an angry 17–year–old child's throwing of a refrigerator magnet at her father constituted wanton and malicious behavior such that an intent to injure may be inferred as a matter of law. The case law leads to exactly the opposite conclusion: ·that, as a matter of law, such an act cannot support an inference of intent to injure.

The supreme court recently reviewed applicable case law in *Walser,* holding that, as a matter of law, intent to injure could not be inferred when a group of teenagers engaged in horseplay pulled a friend's legs, forcing him to let go of the rim of a basketball hoop. *Walser,* 628 N.W.2d at 615. The supreme court noted that intent to injure had not been inferred when an insured struck a baggage clerk after an argument and tug-of-war over a piece of luggage, or when an insured pushed a hat-check girl, causing her to be injured, or when a teenager injured a friend while exploding a device that he had exploded before without causing injuries. *Id.* at 613–14.

In contrast, the supreme court noted, intent to injure had been inferred when an insured drove to a construction site armed with a high-powered rifle loaded with armor-piercing bullets and fired at a truck that he knew was occupied, and when an insured armed himself with loaded weapons to facilitate a robbery. *Id.* at 614.

Grinnell attempts to distinguish *Walser* from the facts of this case by pointing out that the teenagers in *Walser* were found to have been "goofing around" while Jessica Ehmke acted in anger. But, as demonstrated in the cases reviewed in *Walser,* acting in anger is not determinative of intent to injure. Additional cases cited by Grinnell in which intent to injure was inferred involve an insured intentionally punching, stabbing, or shooting at another person, conduct that is factually much more extreme than the conduct of Jessica Ehmke.

Based on a review of the cases, we conclude that the district court erred by determining that Jessica Ehmke acted in such a calculated and remorseless manner, or that her act was such that she knew or should have known that a harm was substantially certain to result, such that intent to injure can be inferred as a matter of law. And we further conclude that the undisputed facts, taken as a whole, could not lead a rational trier of fact to find that the acts of Jessica Ehmke support an inference of intent to injure. We therefore reverse the district court's determination that the intentional-act exclusion applies to preclude coverage for Jessica Ehmke's actions that resulted in injury to Jeffrey Ehmke.

The district court also concluded that the criminal-act exclusion in Grinnell's policy applies to exclude coverage for Jessica Ehmke's act, relying on *Liebenstein v. Allstate Ins. Co.,* for the proposition that intent to injure is immaterial to the applicability of the criminal-act exclusion. *Liebenstein v. Allstate Ins. Co.,* 517 N.W.2d 73, 75 (Minn.App.1994). The insured in *Liebenstein,* however, was convicted of fifth-degree assault for the incident that gave rise to Liebenstein's injury and the criminal-act exclusion in Allstate's policy excluded coverage for injury "resulting

from a criminal act or omission." *Id.* But Jessica Ehmke was not charged with or convicted of any crime for throwing the magnet, and Grinnell's policy's criminal-act exclusion specifically requires an intent to cause loss, making the analysis in *Liebenstein* irrelevant to this case. Even if the language of Grinnell's criminal-act exclusion can be said to create ambiguity with regard to intent, that ambiguity is construed against the insurer. *Walser,* 628 N.W.2d at 613. As discussed above, the facts do not support an inference of intent to injure, therefore, as a matter of law, the criminal-act exclusion in Grinnell's policy does not bar coverage for Jessica Ehmke's act.

## DECISION

As a matter of law, Jessica Ehmke's act of throwing a refrigerator magnet at her father during an argument does not give rise to an inference of intent to injure or intent to cause loss necessary to trigger the intentional-act or criminal-act exclusions in Grinnell's policy covering Jessica Ehmke. Summary judgment granted to Grinnell is reversed, and the case is remanded to district court for entry of summary judgment in favor of Bonnie and Jessica Ehmke. Jeffrey Ehmke's appeal from confirmation of the arbitration award is dismissed.

**Reversed and remanded.**