**STATE OF MINNESOTA
IN COURT OF APPEALS
A24-0495**

Charlene Karen Jundt,
Respondent,

vs.

Marcus Edward Jundt,
Appellant.

**Filed August 26, 2024
Affirmed
Frisch, Judge**

Hennepin County District Court
File No. 27-CV-22-10858

Benjamin J. Court, Sarah R. Almquist, Stinson LLP, Minneapolis, Minnesota (for respondent)

Phillip Gainsley, Minneapolis, Minnesota (for appellant)

Considered and decided by Cochran, Presiding Judge; Frisch, Judge; and Reilly, Judge.*

**SYLLABUS**

The procedure set forth in Minn. Stat. § 548.091, subd. 3b (2022), is not the exclusive method to renew a child-support judgment.

---

* Retired judge of the Minnesota Court of Appeals, serving by appointment pursuant to Minn. Const. art. VI, § 10.

**OPINION**

**FRISCH**, Judge

In his second appeal, appellant argues that respondent cannot renew a judgment for unpaid child support by commencing a civil action because Minn. Stat. § 548.091, subd. 3b, is the exclusive method by which such a judgment may be renewed. Because the plain language of the statute does not provide that it is the exclusive method to renew a child-support judgment, and no genuine issue of material fact exists with respect to respondent's claim for judgment renewal, we affirm the district court's entry of summary judgment in favor of respondent.

**FACTS**

In 2004, a district court dissolved the marriage of appellant Marcus Edward Jundt and respondent Charlene Karen Jundt.[1] In 2012, Charlene obtained a $115,088 judgment against Marcus for unpaid child support. In July 2022, Charlene filed a complaint in district court to renew this judgment, which would have otherwise expired that September. According to the complaint, Charlene had obtained partial satisfaction of this judgment, but Marcus still owed $181,863.08 as of July 1, 2022, representing unpaid principal and accrued and unpaid interest on the judgment.

In his first appeal, Marcus asserted that Charlene had not served the complaint on him, depriving the district court of personal jurisdiction. *Jundt v. Jundt*, No. A23-0287, 2023 WL 5522141, at *2-3 (Minn. App. Aug. 28, 2023). The district court disagreed and

---

[1] Consistent with the first appeal in this matter, we refer to the parties as Marcus and Charlene.

determined that service was effective. *Id.* Marcus appealed this determination, and we affirmed. *Id.* at \*3-4.

Marcus then filed another motion to dismiss in district court, this time arguing that the district court lacked subject-matter jurisdiction. He specifically argued that Minn. Stat. § 548.091, subd. 3b, sets forth the exclusive method for renewal of a child-support judgment and that Charlene did not follow that procedure. Charlene opposed the motion to dismiss and moved separately for summary judgment on her judgment-renewal claim. The district court denied Marcus's motion to dismiss and granted summary judgment in Charlene's favor.

Marcus appeals.

## ISSUE

Does Minn. Stat. § 548.091, subd. 3b, set forth the exclusive method to renew a child-support judgment?

## ANALYSIS

Marcus argues that the district court erred because Minnesota law provides only one method by which a judgment creditor may renew a child-support judgment and Charlene did not use that procedure to renew the judgment. We disagree.

As a threshold matter, Charlene argues that Marcus forfeited this argument because he failed to raise the issue in his first appeal. A party's failure to brief and argue an issue on appeal results in forfeiture of that issue, including when a party fails to brief an issue during a previous appeal. *See Grinnell Mut. Reinsurance Co. v. Ehmke*, 664 N.W.2d 409, 411 (Minn. App. 2003), *rev. denied* (Minn. Sept. 24, 2003); *In re Welfare of M.D.O.*, 462

3

N.W.2d 370, 379 (Minn. 1990) (stating that failure to raise an issue before this court results in a forfeiture of the issue before the supreme court). Marcus responds that he raises an issue of subject-matter jurisdiction, which can be raised at any time. *See Minn. Jud. Branch v. Teamsters Loc. 320*, 971 N.W.2d 82, 86 n.4 (Minn. App. 2022).

We disagree that this matter involves a question of subject-matter jurisdiction. Marcus raises an issue related to a nonjurisdictional claims-processing rule. *See Moore v. Moore*, 734 N.W.2d 285, 287 n.1 (Minn. App. 2007) (noting "that courts and parties often use concepts and language associated with 'jurisdiction' imprecisely to refer to, among other things, nonjurisdictional claims-processing rules or nonjurisdictional limits on a court's authority to address a question"), *rev. denied* (Minn. Sept. 18, 2007); *In re Civil Commitment of Giem*, 742 N.W.2d 422, 427 n.6 (Minn. 2007) (noting that "classifying time prescriptions, even rigid ones, under the heading subject matter jurisdiction can be confounding" and that "[t]he label jurisdictional should be used only for prescriptions delineating the classes of cases (subject-matter jurisdiction) and the persons (personal jurisdiction) falling within a court's adjudicatory authority" (quotations omitted)). The essence of Marcus's claim relates to the interpretation of Minn. Stat. § 548.091, subd. 3b—namely, whether the statute provides for an exclusive method to renew a child-support judgment—and interpretation of a statute falls squarely within the general jurisdiction of the district court.

Thus, Marcus likely forfeited this argument, and we generally do not consider forfeited issues on appeal. *See Thiele v. Stich*, 425 N.W.2d 580, 582 (Minn. 1988). But this rule is not "ironclad," *Oanes v. Allstate Ins. Co.*, 617 N.W.2d 401, 403 (Minn. 2000),

4

and we may elect to reach the argument "as the interest of justice may require," Minn. R. Civ. App. P. 103.04. We reach Marcus's argument in the interest of justice because this issue may arise again if Charlene later seeks to renew this judgment again or renew another of what she estimates are over $5 million in various other judgments against Marcus arising out of the parties' 2004 dissolution.

We turn next to the merits of the issue presented on appeal. The parties dispute the meaning of Minn. Stat. § 548.091, subd. 3b, which provides:

> Child support judgments *may* be renewed by service of notice upon the debtor. Service must be by first class mail at the last known address of the debtor, with service deemed complete upon mailing in the manner designated, or in the manner provided for the service of civil process. Upon the filing of the notice and proof of service, the court administrator shall administratively renew the judgment for child support . . . .

(Emphasis added.) Marcus argues that the phrase "may be renewed" effectively means that subdivision 3b provides for the exclusive method to renew a child-support judgment, while Charlene interprets this language as providing for an alternate procedure to renew a child-support judgment in addition to the common-law procedure for judgment renewal. We review questions of statutory interpretation de novo. *Nelson v. Nelson*, 866 N.W.2d 901, 903 (Minn. 2015)

We interpret Minn. Stat. § 548.091, subd. 3b, by first determining "whether the statute is ambiguous on its face." *Dakota County v. Gillespie*, 866 N.W.2d 905, 909 (Minn. 2015) (quotation omitted) (interpreting child-support statutes). "A statute is ambiguous when the statutory language is subject to more than one reasonable interpretation." *Id.*

5

(quotation omitted). To determine whether subdivision 3b is ambiguous, we "interpret words and phrases according to their plain and ordinary meanings," "interpret [the] statute[] as a whole," and view the subdivision "in the light of [its] context." *Id.* (quotations omitted). If the statute is unambiguous, its plain meaning applies. *Id.*

Marcus argues that the word "may" is mandatory and not permissive, foreclosing alternative judgment-renewal procedures. This interpretation of the statute is unreasonable for two primary reasons.

First, Minnesota law instructs that the word "may" is generally permissive. *See* Minn. Stat. § 645.44, subd. 15 (2022) ("'May' is permissive."); *Thompson v. Schrimsher*, 906 N.W.2d 495, 500 (Minn. 2018) (stating in interpreting a family-law statute that "[m]ay means to be allowed or permitted to" (quotation omitted)). Marcus offers and we see no principled reason to depart from this definition based on the surrounding statutory language. *See Christianson v. Henke*, 831 N.W.2d 532, 536-37 (Minn. 2013) ("Multiple parts of a statute may be read together so as to ascertain whether the statute is ambiguous."). The surrounding statutory language of subdivision 3b does not limit the renewal of a child-support judgment to the administrative renewal process in subdivision 3b and echoes the permissive language set forth in that subdivision. *See* Minn. Stat. §§ 548.091, subd. 2a(b) (instructing that "entered and docketed" child-support judgments are "subject to the same procedures, defenses, and proceedings as any other judgment in district court, and may be enforced . . . in the same manner as judgments under section 548.09, except as otherwise provided"), .09, subd. 1 (stating that "[c]hild support judgments may be renewed pursuant to section 548.091") (2022).

Second, Marcus's position would require us to change the permissive language in Minn. Stat. § 548.091, subd. 3b, to mandatory language. But the statute at issue does not use any mandatory language such as "shall" or "must" in relation to the procedure to renew a child-support judgment. *See* Minn. Stat. § 645.44, subds. 15a (stating that "'[m]ust' is mandatory"), 16 (stating that "'[s]hall' is mandatory") (2022). And the legislature included mandatory language elsewhere in the same statutory scheme, including in subdivision 3b, but elected not to do so in the operative statutory language at issue in this action. We decline to "insert words or meanings that were intentionally or inadvertently omitted by the Legislature." *Harkins v. Grant Park Ass'n*, 972 N.W.2d 381, 387 (Minn. 2022) (quotation omitted); *see also Ewald v. Nedrebo*, 999 N.W.2d 546, 550-51 (Minn. App. 2023) (stating that we will not "rewrite a statute under the guise of statutory interpretation" and "cannot add language that the legislature did not include" (quotation omitted)), *rev. denied* (Minn. Feb. 28, 2024).[2]

We also note that we "presume that statutes are consistent with the common law unless there is express wording or necessary implication of the intent to abrogate the common law." *Dahlin*, 796 N.W.2d at 505. Minnesota courts recognize that "[a] judgment

---

[2] Marcus's reliance on *Dahlin v. Kroening* is also unavailing. 796 N.W.2d 503 (Minn. 2011). In *Dahlin*, the supreme court considered a debtor's argument that the absence of express statutory language authorizing multiple renewals of a spousal-maintenance judgment indicated that "the Legislature has confined multiple renewals of a judgment to child support judgments only." *Id.* at 507. In rejecting this argument, the supreme court noted that "statutes regarding child support judgments" set out "specific, easier to use, procedural rules applicable *only* to child support judgments," including renewal without personal service, but did not intend to "uproot the entire statutory framework regarding the renewal of judgments." *Id.* at 508.

may be renewed by an independent action upon the judgment." *Amica Mut. Ins. Co. v. Wartman*, 841 N.W.2d 637, 640-41 (Minn. App. 2014) (quotation omitted), *rev. denied* (Minn. Mar. 18, 2014). Marcus's interpretation of subdivision 3b would foreclose the existing procedure for renewal of judgments based in common law. And Marcus points to no suggestion by the legislature that it intended to abrogate the common-law means of renewing a judgment solely based on its addition of another procedure to do so for child-support judgments.

Nothing in the statute suggests that only one method exists to renew a child-support judgment. We therefore discern no ambiguity in the statute and hold that the procedure set forth in Minn. Stat. § 548.091, subd. 3b, is not the exclusive method for renewal of a child-support judgment.

Finally, we emphasize that our conclusion is consistent with longstanding public policy favoring the enforcement and collection of child-support judgments. "Many decisions of this court and the supreme court have recognized a substantial state interest in ensuring child support for the state's children." *Doll v. Barnell*, 693 N.W.2d. 455, 463-64 (Minn. App. 2005) (rejecting constitutional challenges to child-support statutes and noting the legislature's "constitutional authority in determining to maximize the recovery of child support"), *rev. denied* (Minn. June 14, 2005). And "[r]emedial statutes are generally entitled to liberal construction in favor of the remedy the statutes provide or the class they benefit." *S.M. Hentges & Sons, Inc. v. Mensing*, 777 N.W.2d 228, 232 (Minn. 2010). Marcus's interpretation of subdivision 3b ignores the public's interest in ensuring child

support for the state's children and conflicts with the remedial purpose of Minnesota's child-support statutes.

## DECISION

We hold that the procedure set forth in Minn. Stat. § 548.091, subd. 3b, is not the exclusive method for renewal of a child-support judgment. The district court properly entered summary judgment in Charlene's favor because the undisputed facts established that she timely commenced an action to renew the child-support judgment.

**Affirmed.**